[Cite as *Mansfield v. Defiance*, 2013-Ohio-1391.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
DEFIANCE COUNTY

THERESA MANSFIELD, ET AL.,

    PLAINTIFFS-APPELLANTS,          CASE NO.  4-12-20

    v.

CITY OF DEFIANCE, OHIO, ET AL,        O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Defiance County Common Pleas Court
Trial Court No. 11-CV-41656

Judgment Affirmed

Date of Decision:   April 8, 2013

APPEARANCES:

    *Danny A. Hill, II*  for Appellants

    *William P. Lang*  for Appellee, City of Defiance

**SHAW, J.**

{¶1} Plaintiffs-appellants, Theresa and James Mansfield (collectively referred to as the "Mansfields"), appeal the August 2, 2012 judgment of the Defiance County Court of Common Pleas granting the motion for summary judgment filed by defendants-appellees, the City of Defiance and Transtar Builders and Developers, Inc., (collectively referred to as "the City"), and dismissing the Mansfields' complaint.

{¶2} On December 4, 2009, Theresa was injured when she tripped on a raised concrete seam located in a crosswalk on a public street in downtown Defiance. Theresa suffered a hairline fracture of her knee cap and received multiple stitches on her face as a result of the fall.

{¶3} On December 2, 2011, Theresa filed a complaint alleging the City to be negligent for failing to repair the alleged defect in the crosswalk. The complaint also listed Theresa's husband, James, as a plaintiff on a loss of companionship and consortium claim.

{¶4} The City filed an answer generally denying the Mansfields' claims.

{¶5} During the course of discovery, Theresa was deposed by the City and affidavits of Theresa and the Defiance City Engineer were filed.

{¶6} The parties subsequently filed cross-motions for summary judgment.

{¶7} On August 2, 2012, the trial court granted the City's motion for summary judgment and dismissed the Mansfields' complaint. Specifically, the trial court found that Theresa and James failed to submit evidence demonstrating that the City was negligent. The trial court also applied the so-called "two inch rule" and found the defect to be insubstantial as a matter of law. The trial court further found that Theresa failed to present evidence establishing that attendant circumstances were present at the time of her fall to render the defect substantial. *See Cash v. Cincinnati*, 66 Ohio St.2d 319, 323-24 (1981)(stating that a difference in height of two inches or less in the concrete of the public walkway create a presumption that the defect is insubstantial and not actionable as a matter of law which may be rebutted by a showing of attendant circumstances sufficient to render the defect substantial).

{¶8} The Mansfields filed this appeal, asserting the following assignment of error.

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE *[sic]*, CITY OF DEFIANCE, ET. AL, AS THERE REMAIN MATERIAL ISSUES OF FACT THAT SHOULD BE DETERMINED BY A JURY.**

{¶9} In their sole assignment of error, the Mansfields argue that the trial court erred when it granted the City's motion for summary judgment.

Specifically, the Mansfields maintain that genuine issues of material fact exist as to whether attendant circumstances were present to render the defect substantial.

{¶10} Initially, we note that an appellate court reviews a grant of summary judgment de novo, without any deference to the trial court. *Conley–Slowinski v. Superior Spinning & Stamping Co.*, 128 Ohio App.3d 360, 363 (1998). A grant of summary judgment will be affirmed only when the requirements of Civ.R. 56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *see Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 1995-Ohio-286, paragraph three of the syllabus.

{¶11} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." *Mitseff v. Wheeler*, 38 Ohio St.3d 112, syllabus (1988). The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 1996-Ohio-107. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-

moving party to produce evidence on any issue which that party bears the burden of production at trial. *See* Civ.R. 56(E).

**{¶12}** Generally, municipalities are not liable as a matter of law for minor defects in sidewalks and other walkways, including crosswalks, because these are commonly encountered and pedestrians should expect such variation in the walkways. The Second Appellate District has explained this rule, often called the "two-inch rule," as follows:

> **Courts developed the rule that a difference in elevation between adjoining portions of a sidewalk or walkway that is two inches or less in height is considered insubstantial as a matter of law and thus does not present a jury question on the issue of negligence. In *Cash v. Cincinnati*, 66 Ohio St.2d 319, 20 O.O.3d 300, 421 N.E.2d 1275, the court clarified the "two-inch" rule, stating that courts must also consider any attendant circumstances in determining liability for defects in the walkway. * * * Thus *Cash* established a rebuttable presumption that height differences of two inches or less are insubstantial [and not actionable] as a matter of law. The presumption may be rebutted by showing attendant circumstances sufficient to render the defect substantial.**

*Stockhauser v. Archdiocese of Cincinnati*, 97 Ohio App.3d 29, 33 (2d Dist. 1994) (citations omitted). Attendant circumstances may make an insubstantial defect actionable if it is reasonably foreseeable that an insubstantial defect will cause an injury. *See Gates v. Speedway Superamerica, L.L.C.*, 8th Dist. No. 90563, 2008–Ohio–5131, ¶ 23. "The attendant circumstances must be such that a reasonable trier of fact could find that the defect was substantial and unreasonably dangerous

in order to prevent summary judgment for the defendants." *Boros v. Sears, Roebuck & Co.*, 8th Dist. No. 89299, 2007–Ohio–5720, ¶ 14. "Attendant circumstances may include the condition of the sidewalk as a whole, the volume of pedestrian traffic, the visibility of the defect, and whether the accident site was such that one's attention could easily be diverted." *Armstrong v. Meade*, 6th Dist. No. L–06–1322, 2007–Ohio–2820, ¶ 14.

{¶13} The following evidence was before the trial court upon its consideration of the cross-motions for summary judgment.

{¶14} In her deposition, Theresa testified that on December 4, 2009 at approximately 6:50 pm, she was with four other people and was standing at the corner of First and Clinton streets. She explained that the group waited for the crosswalk signal to indicate that it was safe to cross, and then observed that the traffic had stopped. Theresa recalled that she walked off the handicap ramp and began to cross the street. Theresa surmised that the left toe of her shoe must have caught on the raised asphalt seam in the crosswalk. Theresa stated that she tripped, flew through the air, and fell on the street. Theresa testified that she suffered a hairline fracture of her kneecap and injuries to her face, which required stitches.

{¶15} Theresa also filed an affidavit and averred the following:

**(1)  Affiant is one of the Plaintiffs in the above titled action.**

**(2) Affiant further states that the attached exhibit is a true and accurate representation of the crosswalk and street in the same state of dis-repair, and in the same condition in the [sic] as they were on the day she suffered her injuries as alleged in the complaint filed in the above captioned matter.[1]**

**(3) Affiant further states she tripped over the improperly repaired and maintained crosswalk area of the roadway, approximately two to three feet into the street, well after the brick handicapped ramp had ended.**

**(4) Affiant further states that she tripped over the improperly repaired and maintained crosswalk area of the roadway, approximately two to three feet into the street, on the raised portion of the asphalt, as indicated by the circled areas in the attached Exhibit.**

(Aff. Apr. 4, 2012).

{¶16} The City submitted an affidavit from Lee Rausch, the Defiance City Engineer, who averred the following.

**1. I am and was, at all times material, the City Engineer for the City of Defiance. I am a licensed Ohio Professional Engineer (P.E.).**

**2. I am familiar with the crosswalk on Clinton St. at the corner of First St. and Clinton St.**

**3. Records of complaints regarding the safety of the streets in Defiance, Ohio are kept at my direction, and are under my general control in the ordinary course of business as the City Engineer.**

---

[1] The exhibits referred to in Theresa's affidavit were photographs of the crosswalk. The record indicates that Theresa took the photographs on December 6, 2009, during the day. The photographs depict a raised seam between two layers of asphalt which extends the entire width of the crosswalk.

**4.    Any resurfacing of a city street needs approval from the City Engineering Department and the records are kept at the Engineering Department.**

**5.    There was no record of any complaint about the safety of this crosswalk made with the City Engineer's office prior to December 4, 2009.  The City Engineer's office did not receive any notice of a defect in this street crosswalk.**

**6.    It is my opinion that when a citizen makes a complaint about a dangerous area of a city street, that complaint is either routed to the Engineering Department or the Street Department.**

**7.    I was never notified that any member of the Street Department received a complaint about the safety of this crosswalk.**

**8.    I am familiar with the standard operating procedure of the Street Department when it comes to repairing city streets to remove dangerous areas.**

**9.    It is standard operating procedure for the Street Department to repair any seam in a street that is above one inch, and presents a danger to pedestrians.**

**10.    The standard operating procedure is to patch the seam to remove any dangerous condition, or to resurface the street if a patch will not suffice.  If a patch is not a viable option due to winter weather, the standard operating procedure is to place a barricade at the dangerous area to alert the public, until the area can be patched.**

**11.    One of my responsibilities as City Engineer is to be aware of the conditions and repairs relating to city streets.**

**12.    Prior to December 4, 2009 there was no recent construction that took place at this intersection.**

**13. The Street Department made no repair, nor did they barricade the seam on Clinton St. prior to December 4, 2009.**

> **The Street Department continuously reviews the condition of city streets, and determined no dangerous area existed. No complaint was ever received regarding this crosswalk.**
>
> **14. In 2008 all city streets were evaluated to determine which streets needed resurfacing, the evaluation was based on the conditions of the streets. Neither the Street Department nor the Engineering Department determined that Clinton St. was of any danger to the public, or that it needed resurfaced immediately.**
>
> **15. I have received the plaintiff's provided photographs of the seam in Clinton St., which is something that I often do and have been trained to do as a civil engineer to preliminarily evaluate and determine the existence of hazards in the streets. In my determination, the seam is less than one inch high, and provided no danger to the general public crossing the street at that location.**
>
> **16. In 2010 Clinton St. was resurfaced and some construction was done on the sidewalks of Clinton St. The resurfacing was not done in relation to this lawsuit. The resurfacing was pre-planned well before December, 2009. The resurfacing had no relation to any perceived danger arising from a fall that took place in December, 2009.**
>
> **17. I am aware that every year the City allocates over $450,000 to the resurfacing of City streets.**

(Aff. Apr. 13, 2012).

{¶17} As previously stated, the two-inch rule establishes a presumption that municipalities have no duty to repair a defect in a public walkway measuring two inches or less in height unless attendant circumstances exist making it reasonably foreseeable that the defect will cause an injury. *See*, *generally*, *Cash v. Cincinnati*, supra.

{¶18} Here, the only evidence in the record regarding the height of the defect in the crosswalk is found in the affidavit of Rausch, the City Engineer. In his affidavit, Rausch opined that "the seam is less than one inch high, and provided no danger to the general public crossing the street at that location." (Rausch Aff. at ¶ 15). The Mansfields failed to provide *any* evidence contradicting Rausch's opinion or even suggesting that the defect was greater than two-inches. Therefore, the only evidence in the record supports the conclusion of the trial court that the two-inch rule is applicable to this case.

{¶19} Next, the Mansfields failed to present any evidence that attendant circumstances were present at the time of Theresa's fall which would preclude the two-inch rule from barring their negligence claim against the City. Although, Theresa testified in her deposition that it was dark at the time she fell, she never states that the darkness or her inability to see the seam in the crosswalk contributed to her fall. Theresa stated in her deposition that she waited for "the crosswalk to tell us we could walk * * * when the light changed we watched to make sure the traffic all stopped[.]" (Depo. at 12-13). Theresa's statement in this regard suggests that any potential distraction caused by automobile traffic was minimized. Moreover, there is no indication in the record that there was heavy pedestrian traffic in the crosswalk or that there were any other pedestrians in the crosswalk at the time besides Theresa and the four other people she was with in

her group. Notably, there is also no indication in the record that the other people who were in the crosswalk with Theresa experienced similar difficulty when traversing the asphalt seam.

{¶20} Furthermore, the affidavit of the City Engineer stated that prior to Theresa's fall, the City had received no complaints about the seam in the crosswalk, that the City maintained a standard protocol to remove any seam that is more than one inch in height and presented a danger to pedestrians, and that in 2008 the City evaluated the streets in need of repair and this particular crosswalk was not determined to be one of them. Again, the Mansfields failed to provide *any* evidence contradicting the statements of City Engineer regarding the safety of the crosswalk at the time of Theresa's fall.

{¶21} After construing the evidence most strongly in favor of the non-moving party, we conclude that the Mansfields failed to meet their burden to demonstrate that genuine issues of material fact remain as to whether 1) the defect in the crosswalk was insubstantial and 2) as to whether attendant circumstances existed making it reasonably foreseeable that the defect would cause an injury. Accordingly, we find that the trial court did not err in concluding that the two-inch rule barred the Mansfields' negligence claim, that summary judgment was appropriate, and that the City was entitled to judgment as a matter of law. The Mansfields' assignment of error is overruled.

{¶22} For all these reasons, the judgment of the Defiance Court of Common Pleas is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**