[Cite as *Penn v. Regional Transit Auth.*, 2021-Ohio-2102.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

EARL PENN,                                    :

    Plaintiff-Appellant,            :

                                       No. 109660

v.                                            :

REGIONAL TRANSIT AUTHORITY,    :

    Defendant-Appellee.            :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 24, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-912292

---

### *Appearances:*

Fred D. Middleton, *for appellant.*

Sheryl King Benford, General Counsel – Deputy Manager for Legal Affairs, and Keith Ganther, Acting Deputy General Counsel – Litigation, *for appellee.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Plaintiff-appellant Earl Penn appeals from a decision of the Cuyahoga County Court of Common Pleas granting summary judgment in favor of defendant-appellee Greater Cleveland Regional Transit ("RTA") regarding a personal injury

suit filed by Penn against RTA.  Penn fell when exiting an RTA train and his left leg fell into the gap between the train and the platform.  The trial court found RTA is entitled to political subdivision immunity.  On appeal, Penn raises one assignment of error for our review:

> The trial court erred in granting appellee's motion for summary judgment.

{¶ 2}  After a review of the record and applicable law, we find no merit to the appeal and affirm the trial court's judgment.

**Complaint, Interrogatories, Deposition Testimony, and Video Evidence**

{¶ 3}  On March 8, 2019, Penn filed a personal injury suit against RTA.  He alleged that, on March 8, 2017, he fell when he exited an RTA train at the Tower City station and sustained injuries.  In his complaint, he asserted that RTA was negligent in failing to maintain its premises in a safe condition.  Regarding the circumstances surrounding his fall, he alleged the following:

> 1.  EARL PENN rode the train to the Tower City Station in Cleveland Ohio and when he exited the rail car he was walking to the pay station when his left leg fell between the platform and the train.
>
> 2.  His left leg was stuck up to the knee between the train and platform causing him to fall and twisting to the right, injured his shoulder left hip left knee and ankle.

{¶ 4}  In its answer, RTA raised the affirmative defense of political subdivision immunity, among other defenses.

{¶ 5}  In the interrogatories, Penn was asked to describe any defect of the train or the station causing his fall.  He answered "[u]nmasked edge of platform and

edge of train close to a foot apart. Not able to see the defect as I exited the train."
When asked to describe any act or omission of an RTA employee that may have caused his fall, he answered "[u]nknown at this time."

{¶ 6} Penn was deposed by RTA. His deposition testimony regarding the incident added details not alleged in the complaint and was at times confusing. When asked by RTA's counsel, he described the incident as follows:

> I was getting off the train downtown. And as I was getting off, someone called my name. I got off the train and turned around to see who called me. Next thing I know I fell in the train there — between the tracks and the train — where the train leave[s] you off.

{¶ 7} According to his testimony, he has taken the train "hundreds of times," but he fell on this occasion because immediately after he stepped off the train, someone called his name and, when he turned around and looked backwards to see who called him, he fell and his left foot fell into the gap between the train and the platform. He was asked whether, prior to falling, he "observe[d] the gap between the train and the platform," and he answered: "No, I never did. All I know is I fell." He acknowledged, however, that had he looked down at the ground, he would have seen the gap between the train and the platform.

{¶ 8} When asked by his own counsel to describe the incident, Penn added further details as follows:

> Q. And can you tell us what happened when you got off the train?
>
> A. * * * When I got off the train, I think one of the RTA drivers — workers called me and stuff. That's when I turned around and fell off — turned around and fell into the hole. It was one of the RTA workers. Like I said, I knew that lady. It was about three or four workers on the

train and stuff. They [were] the ones that was [sic] telling the train to stop, telling me to get out of the train — get out the hole, you know.

Q. And where were these RTA workers?

A. They were sitting on the train. There were about three or four, yeah.

Q. Were they on the train you were on?

A. Yeah, they were on the train I was on, because they was [sic] going to work or —

Q. How close were they to you when you got off the train?

A. They was [sic] — when I fell, it was right there in the window. You know how you fall, and they sitting in their seats. About three or four of them, they was [sic] sitting there.

{¶ 9} The testimony indicates that three or four RTA workers — which included a female driver whom Penn knew and alluded to earlier in his deposition — were on the same train he was, on their way to work and they were sitting in their seats when Penn fell.

{¶ 10} The incident was captured by security footage that included audio, but the quality of the audio is poor. The footage shows Penn exited the train but then turned around and appeared to converse with someone on the train while standing with his left foot on the platform and right foot on the train. His left foot then fell between the space between the train and the platform. He immediately stood up and walked away.

{¶ 11} An RTA employee gave Penn his card, and another RTA staff member at the turnstile told him to make a report if necessary. Penn never contacted RTA

about the incident. A few days after the incident, he went to a hospital complaining of pain in his leg, back, hip, and shoulder. He was diagnosed with contusions and given pain pills. He also sought treatment for his pain later from two clinics.

{¶ 12} RTA filed a motion for summary judgment, attaching as exhibits Penn's deposition testimony and the security footage. RTA contended that as a political subdivision, it is immune from liability in this case pursuant to R.C. Chapter 2744. Specifically, RTA argued that no exceptions to immunity enumerated under R.C. 2744.02(B) apply in this case. RTA also argued that, in the alternative, Penn's claim is barred by the open-and-obvious doctrine.

{¶ 13} Penn opposed RTA's motion for summary judgment. In an affidavit attached to his brief in opposition, he elaborated further on the circumstances surrounding his fall as follows:

> He was called back into the train doorway by RTA employees who were near the door and their calls drew his attention away from the space between the platform and the train so that he was not able to see the space where his foot and leg were caught. That distraction by the RTA employees is visible in the video from the train which recorded his fall.
>
> * * *
>
> * * * He had seen the RTA employee who called out to him before and she caught his attention as an employee, in an RTA uniform, he should respond to as he was riding the train which was controlled and operated by RTA. He could not ignore an employee of the RTA when they called out to him.
>
> * * * I fell between the train and the platform because the RTA employee called me to get back on the train and I was paying attention to her and did not see the dangerous space my foot went down into.

{¶ 14} In his brief in opposition, Penn alleged the video showed "two RTA employees enter the train as plaintiff exited and they called out to him, which made him re-enter the train to converse with the employees. The distraction of the conversation with the RTA employees caused plaintiff to not be aware or to see the gap between the train and the platform." He alleged that it was the distraction that caused his foot to slide between the train and platform causing his fall.

{¶ 15} Penn argued in his brief that political subdivision immunity did not apply to shield RTA from liability due to the immunity exception set forth in R.C. 2744.02(B)(2) ("negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions"). To support this claim, Penn elaborated further on his encounter with the RTA employees. He alleged that "[t]he RTA employees, dressed in full uniform, had apparent authority to call him back on the train. He responded to them and started to re-enter the train to converse with the employees. As he attempted to break off the conversation and exit the train, he was distracted and did not look down at the gap between the train and the platform." He claimed the RTA employees distracted him and also failed to warn him regarding the gap.

{¶ 16} The trial court granted RTA's motion for summary judgment, concluding that there was no dispute of material fact that RTA was entitled to political subdivision immunity under R.C. 2744.02(A). On appeal, Penn argues the trial court erred in granting summary judgment in favor of RTA.

**Summary Judgment Standard**

{¶ 17} Civ.R. 56(C) states that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

{¶ 18} Summary judgment is appropriate where: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his or her favor. *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 19} We review a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

**Political Subdivision Immunity**

{¶ 20} R.C. Chapter 2744, the Political Subdivision Tort Liability Act, sets forth a three-tier analysis for determining whether a political subdivision is immune from liability for injury or loss to property. *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781. In the first tier of the analysis, the court applies the general rule provided in R.C. 2744.02(A)(1), which states that a political subdivision is generally "not liable in damages in a civil action for injury, death, or

loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶ 21} That immunity is not absolute, however. In the second tier of the analysis, the court determines whether any of the five exceptions enumerated in R.C. 2744.02(B) applies to expose the political subdivision to liability. If any of the exceptions enumerated in R.C. 2744.02(B) applies, the court proceeds to the third tier of the analysis and determines whether any of the defenses enumerated in R.C. 2744.03 applies to provide the political subdivision a defense against liability. *Colbert* at ¶ 9. If none of the five exceptions applies, the immunity analysis ends without proceeding to the third tier. *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶ 32.

**Analysis: R.C. 2744.02(B)(2) is Inapplicable to Remove Immunity**

{¶ 22} RTA is a political subdivision created pursuant to R.C. 306.31 et seq. *Parsons v. Greater Cleveland Regional Transit Auth.*, 8th Dist. Cuyahoga No. 93523, 2010-Ohio-266, ¶ 7, citing *Drexler v. Greater Cleveland Regional Transit Auth.*, 80 Ohio App.3d 367, 609 N.E.2d 231 (8th Dist.1992). Furthermore, R.C. 2744.01(G)(2) states that "[a] 'proprietary function' includes * * * (c) [t]he establishment, maintenance, and operation of * * * a railroad, a busline or other transit company * * *." Accordingly, this case involves a political subdivision engaged in a proprietary function, and RTA is immune from liability for Penn's

injury unless any of the five exceptions to immunity enumerated in R.C. 2744.02(B) applies to expose it to liability under the second tier of the immunity analysis.

{¶ 23} The five exceptions enumerated in R.C. 2744.02(B) are (1) the negligent operation of a motor vehicle by an employee; (2) negligent performance of acts by the employees regarding proprietary functions; (3) the negligent failure to keep public roads open and in repair; (4) the negligence of employees occurring on certain buildings used in connection with the performance of governmental functions; and (5) any express imposition of liability by statute. R.C. 2744.02(B)(1)-(5).

{¶ 24} Penn argues his claim falls under the exception to immunity set forth in R.C. 2744.02(B)(2). RTA argues the exception does not apply in this case and it is immune from liability for Penn's injury. R.C. 2744.02(B)(2) states:

> Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by *the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.*

(Emphasis added.)

{¶ 25} We first observe that, over the course of the litigation, Penn's theory of RTA's liability evolved significantly. His complaint alleged that RTA was liable in failing to maintain its premises in a safe condition, which caused him to fall into the gap between the train and the platform. In the interrogatories, he stated that the gap was a foot wide and he was unable to see the "defect" as he exited. In his deposition testimony, he admitted he had taken the train "hundreds of times"

without incident; for the first time, he alleged that "someone" called his name and he fell when he turned around to see who was calling him. Later in the deposition, when asked by his counsel to describe the incident, he added more details to his account — it was one of the RTA employees, who were on the same train and on their way to work, who called his name and distracted him. In the affidavit attached to his brief opposing RTA's motion for summary judgment, he stated that he was "called back into the train" by RTA employees who, by calling him, drew his attention away from the gap between the platform and the train; in the brief, he stated he reentered the train to converse with the RTA employees and he was unaware of the gap because of the distraction of the conversation.

{¶ 26} By its own terms, the exception to immunity set forth in R.C. 2744.02(B)(2) applies to "negligent performance of acts by [political subdivisions'] employees with respect to proprietary functions," which in this case involves "establishment, maintenance, and operation" of RTA's transit system. R.C. 2744.01(G)(2)(c). The RTA employees whom Penn encountered when he exited the train were not performing an act relating to "establishment, maintenance, and operation" of the transit system, as Penn's own testimony reflects these individuals were themselves passengers on the train on their way to work and not on duty as employees when the incident occurred. Thus, we find R.C. 2744.02(B)(2) inapplicable here without reaching the question of whether the RTA employees' conduct was negligent. RTA is immune as a public subdivision because the

exception set forth in R.C. 2744.02(B)(2), which is the basis of Penn's claim for RTA's liability, does not apply under the circumstances of this case.

{¶ 27} We add, however, that even if we were to reach the question of whether the RTA employees were negligent in their conduct, we would find that there is no genuine issue of material fact regarding this issue. Penn claims that when the RTA employee called out to him, they distracted him, and they should have warned him about the existence of the gap. However, in his deposition, he acknowledged that had he looked down on the ground, he would have seen the gap. In his affidavit, he also admitted he did not see "the dangerous gap [his] foot went down into." The gap is not latent but rather an open-and-obvious condition, and there is no duty to warn regarding an open-and obvious-condition. *Armstrong v. Best Buy Co. Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088. The trial court properly granted summary judgment in favor of RTA on the ground of political subdivision immunity.

{¶ 28} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

SEAN C. GALLAGHER, P.J., and
LISA B. FORBES, J., CONCUR