[Cite as *Powell v. Cleveland*, 2022-Ohio-4286.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| MAURIO POWELL, ET AL., | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 111338 |
| v. | : | |
| CITY OF CLEVELAND, ET AL., | : | |
| Defendants-Appellees. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 1, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-934923

### *Appearances:*

Zuckerman, Lear & Murray, Co., L.P.A., Larry W. Zukerman, and Brian A. Murray, *for appellants*.

Mark D. Griffin, Cleveland Director of Law, and Jerome A. Payne, Jr., Assistant Director of Law, *for appellee*.

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Plaintiffs-appellants, Maurio and Yulonda Powell, appeal the trial court's decision granting summary judgment in favor of defendant-appellee, the city of Cleveland. For the reasons that follow, we affirm.

## I. Factual History and Procedural Background

{¶ 2} On September 25, 2016, Maurio was operating his motorcycle. As he approached the intersection of East 30th Street and Central Avenue in Cleveland, Ohio, he observed in the roadway, a one-inch-thick steel plate that Cleveland city workers positioned to temporarily cover an excavation area that had been backfilled in anticipation of the installation of permanent pavement. As Maurio attempted to maneuver around the steel plate, he encountered a dip in the roadway. He alleged that the front tire of his motorcycle caught the edge of the steel plate causing him to lose control of his motorcycle and collide with a concrete divider in the roadway. He suffered injuries to the left-side of his body, including a broken leg and hip that required surgery.

{¶ 3} The Powells filed a personal injury lawsuit against the city, Rick Roush Motor Sports, Automotive Partners II, L.L.C., Roush Enterprises, Inc., and Ian Hodges.[1] As it pertains to this appeal, the Powells claimed that the city negligently failed to (1) keep the public road in repair, (2) remove a raised, metal obstruction from the public road, and (3) provide adequate warnings of the hazardous conditions of the public road.[2] Yulonda maintained a claim for loss of consortium. The city filed its answer and asserted several affirmative defenses,

---

[1] The Powells' causes of action against the non-city defendants pertained to the installation of an aftermarket larger front wheel/tire on Maurio's motorcycle.

[2] The Powells' complaint focuses on the city's placement and usage of the steel plate in the roadway. The complaint is devoid of any allegation regarding the presence of a dip or depression in the roadway before the steel plate.

including immunity pursuant to R.C. Chapter 2744, lack of actual or constructive notice of the alleged hazard or dangerous condition, and that the alleged hazard was open and obvious.

{¶ 4} The city moved for summary judgment contending that it was immune from liability pursuant to R.C. Chapter 2744. The Powells opposed the motion, contending that the exception to immunity found in R.C. 2744.02(B)(3) applies and that genuine issues of material fact exist whether the city was negligent in keeping the road in repair and free from obstructions, to wit: the condition of the steel plate and the dip in the roadway, and whether adequate warnings of the alleged hazardous conditions were provided to motorists traveling the roadway.

{¶ 5} The trial court granted the city's motion for summary judgment concluding that no exception abrogates the city's general immunity under R.C. Chapter 2744 because no evidence was presented to create a genuine issue of material fact that the roadway was deteriorated or in such disrepair to create a potentially hazardous condition, or that the roadway contained an obstruction.

{¶ 6} The Powells now appeal, raising the following three assignments of error, each contending that the trial court erred in granting summary judgment in favor of the city:

I. The lower court erred in granting the city's motion for summary judgment when it ignored the facts in the record that raised an issue of material fact as to whether the road was in disrepair.

II. The lower court erred in granting the city's motion for summary judgment when it held that a metal plate could not be an obstruction as a matter of law.

III. The lower court erred when it failed to consider whether the failure to place signs warning of the dip or the plate were proprietary functions of government and whether the city's failure to place such signs could have amounted to negligence.

## II. Standard of Review

{¶ 7} Questions of immunity are matters of law, so they are particularly apt for resolution by way of summary judgment. *FirstEnergy Corp. v. Cleveland*, 179 Ohio App.3d 280, 2008-Ohio-5468, 901 N.E.2d 822, ¶ 7 (8th Dist.). We review a trial court's decision on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). In a de novo review, this court affords no deference to the trial court's decision and we independently review the record to determine whether the grant of summary judgment is appropriate. *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12 (8th Dist.).

{¶ 8} Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

{¶ 9} The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). The moving party has the initial responsibility of informing the trial court of the basis for the motion and identifying

those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Id.* After the moving party has satisfied this initial burden, the nonmoving party has a reciprocal duty to set forth specific facts by the means listed in Civ.R. 56(C) showing that there is a genuine issue of material fact. *Id.*

## III. Political Subdivision Immunity

{¶ 10} Determining whether a political subdivision is immune from tort liability involves a three-step analysis. *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 10. First, R.C. 2744.02(A)(1) sets forth the general blanket immunity applicable to political subdivisions. It provides that a political subdivision is generally not liable in a civil action for injury, death, or loss to person or property incurred while performing governmental or proprietary functions. The next step places the burden on the plaintiff to overcome this statutory immunity by showing that one of the five exceptions contained in R.C. 2744.02(B) applies. If a plaintiff demonstrates that one of the five enumerated exceptions to political subdivision immunity applies, then the final step permits the political subdivision to then assert one of the defenses set forth in R.C. 2744.03(A) to revive or reinstate its immunity.

### A. General Immunity — R.C. 2744.02(A)(1)

{¶ 11} In this case, there is no dispute that the city is a political subdivision and that it was performing a governmental function. *See* R.C. 2744.01(C)(2)(e) (the regulation of the use of, and the maintenance and repair of, roads, highways, and

streets is a governmental function). It is well-settled in Ohio that a municipal corporation is not an insurer of the safety of its streets. *Deckant v. Cleveland*, 155 Ohio St. 498, 502, 99 N.E.2d 609 (1951); *Gibbs v. Girard*, 88 Ohio St. 34, 102 N.E. 299 (1913), paragraph one of the syllabus. As such, a political subdivision is generally immune from tort liability in its maintenance and repair of public roadways unless one of the five exceptions contained in R.C. 2744.02(B) applies.

### B. Exception to Immunity — R.C 2744.02(B)(3)

{¶ 12} Pertinent to this appeal, the Powells contend that the relevant immunity exception is that the city is "liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads." R.C. 2744.02(B)(3).

{¶ 13} This court has concluded that the terms "in repair" and "obstruction" exist separately in R.C. 2744.02(B)(3) and provide two independent bases for overcoming general immunity. *Leslie v. Cleveland*, 2015-Ohio-1833, 37 N.E.3d 745, ¶ 11 (8th Dist.), citing *Todd v. Cleveland*, 8th Dist. Cuyahoga No. 98333, 2013-Ohio-101, ¶ 13-14, citing *Bonace v. Springfield Twp.*, 179 Ohio App.3d 736, 2008-Ohio-6364, 903 N.E.2d 683, ¶ 29 (7th Dist.).

{¶ 14} This court has noted that R.C. Chapter 2744 fails to define the phrase "in repair." *Leslie* at ¶ 14. This court has found, however, that "in repair" has been interpreted to include maintaining a road's condition after construction or reconstruction, including fixing holes or crumbling pavement. *Todd* at ¶ 15, citing *Crabtree v. Cook*, 196 Ohio App.3d 546, 2011-Ohio-5612, 964 N.E.2d 473, ¶ 27 (10th

Dist.), citing *Bonace* at ¶ 29; *see also Heckert v. Patrick*, 15 Ohio St.3d 402, 406, 473 N.E.2d 1204 (1984) (interpreting a statute containing similar language that "in proper repair" concerns deterioration or disassembly of county roads and bridges). As such, this court has held that political subdivisions have a duty to repair roads that have deteriorated into a potentially hazardous condition. *Leslie* at ¶ 14.

{¶ 15} Regarding the other basis for overcoming a city's general immunity, the term "obstruction" is an impediment that "blocks or clogs the roadway and not merely a thing or condition that hinders or impeded the use of the roadway or that may have the potential to do so." *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 30.

{¶ 16} Accordingly, the city is immune from tort liability in this case unless the evidence creates a genuine issue of material fact that (1) the roadway deteriorated into a potentially hazardous condition or that the roadway contained an obstruction; and (2) if the roadway contained such conditions, whether the city acted negligently in failing to repair or remove those conditions.

### 1. Keep Public Roads in Repair

{¶ 17} In their first assignment of error, the Powells contend that the trial court erred in granting summary judgment "when it ignored the facts in the record that raised an issue of material fact as to whether the road was in disrepair."

{¶ 18} The city moved for summary judgment contending that no genuine issue of material fact exists to establish that the city negligently failed to keep the roadway in repair. Specifically, the city maintained that neither the dip in the

roadway nor the existence of the steel plate were hazardous conditions as a matter of law because the roadway was not deteriorating or crumbling and it did not contain any potholes.

{¶ 19} The Powells opposed the city's motion, contending that a genuine issue of material fact exists regarding whether the roadway was in a state of disrepair due to the presence of a dip in the roadway and because the steel plate in the roadway was not tapered.[3]

{¶ 20} Regarding the dip in the roadway, the Powells have not satisfied their reciprocal burden of providing evidence that the presence of the dip rendered the roadway in disrepair. The Powells opposed the city's summary judgment contending that the dip in the roadway was significant enough that it could cause Maurio to lose control of his motorcycle and/or be unable to avoid clipping the raised steel plate.

{¶ 21} In support, the Powells rely on the report and deposition testimony of their accident reconstructionist, Tony J. Myers. He characterized the dip as a "depression," and stated that it existed in the crosswalk of East 30th Street. Myers

---

[3] The Powells assert for the first time in their appellate reply brief that the ongoing and unfinished roadway repair performed by the city employees render the roadway in a state of disrepair because the excavation of the road constituted "disassembling" and "fixing holes." The Powells did not make this argument before the trial court. In fact, the Powells never alleged in their complaint that the excavation area under the steel plate rendered the roadway in disrepair. Moreover, the Powells never alleged that the presence of the steel plate itself made the roadway in disrepair. Rather, the Powells' expert only opined that the city violated a standard of care because it did not taper the edges of the steel plate, did not add a skid resistant surface to the plate, and did not use advance warning signs regarding the presence of the plate.

opined that the depression in the roadway contributed to Maurio's accident — "the combination of the depression in the roadway, the rider's efforts to avoid the steel plate on the roadway and the aftermarket larger wheel installed on the Honda all contributed to the loss of control of the motorcycle." *See* Myers affidavit and report. He supported his opinion by stating that although the depression was not visible prior to navigating over it, it was significant enough that it resulted in the loading and unloading of the suspensions of vehicles traveling over it, and he could feel the dip as he drove his vehicle over it. (Deposition Tr. 44-46.) He admitted, however, that his vehicle was not damaged as a result of driving over the depression and that he did not observe any vehicles having difficulty navigating over the depression in the roadway. (Tr. 46).

{¶ 22} The Powells also support their argument with Maurio's deposition testimony in which he also testified that he did not see the dip in the crosswalk of the roadway. He testified, however, that the dip itself was not significant enough for him to lose control on his motorcycle — "I wouldn't say that I lost control of the bike. I would say in conjunction with the plate being in the road, two imperfections at once definitely contributed to it." (Tr. 56); *see also* tr. 114 (denying losing control of the motorcycle as a result of the dip before reaching the steel plate). He further admitted that he still had control of his motorcycle, stating that if the plate had not been in the road, he could have been able to navigate through the intersection. (Tr. 115.)

{¶ 23} Even if Maurio's encounter with the depression in the roadway contributed to him losing control of his motorcycle, this fact does not create a genuine issue of material fact that the presence of the depression rendered the roadway in a state of disrepair or that the roadway was deteriorating to create a potentially hazardous condition.

{¶ 24} Both Myers and Maurio testified that the depression existed in the crosswalk of the roadway.[4] Myers testified that he did not know how the depression was formed or how long it had been there. Additionally, he admitted that he did not take any measurements of the depression. Similarly, Maurio testified at deposition that he was unsure of the depth of the dip in the crosswalk, but stated that it was not a result of the construction being done on the roadway. Accordingly, the Powells presented no evidence as to the depression's size, creation, or duration for this court to conclude that a genuine issue of material fact exists that the depression was a potentially hazardous condition or that the road was in disrepair as a result of the depression. *Compare Lakota v. Ashtabula*, 11th Dist. Ashtabula No. 2015-A-0010, 2015-Ohio-3413 (testimony and evidence presented that the exposed depression in

---

[4] Although not raised by the city, we note that courts have developed the "two-inch rule" when addressing elevation changes in sidewalks or walkways, including a crosswalk in a public street. *See Nadrowski v. Cleveland*, 8th Dist. Cuyahoga No. 111139, 2022-Ohio-3232, ¶ 16. This rule establishes a presumption that municipalities have no duty to repair a defect in a public walkway measuring two inches or less in height unless attendant circumstances exist making it reasonably foreseeable that the defect will cause injury. *Mansfield v. Defiance*, 3d Dist. Defiance No. 4-12-20, 2013-Ohio-1391 (reviewing whether a raised defect in a crosswalk was substantial). The rule provides that defects two inches or less are "insubstantial as a matter of law" and thus not actionable. *Nadrowski* at ¶ 16, citing *Stockhauser v. Archdiocese of Cincinnati*, 97 Ohio App.3d 29, 33, 646 N.E.2d 198 (2d Dist.1994).

the roadway was six- to eight-inches deep and backfilled with loose gravel; thus, issue of fact existed whether the roadway was "in repair").

{¶ 25} Additionally, the Powells have not presented any testimony or evidence that other motorists had been unable to safely travel over the depression. Rather, the city supported its motion with an affidavit from Shelton Coleman, assistant commissioner for the city of Cleveland Division of Streets, who confirmed that no complaints regarding chuckholes, depressions, or dangerous conditions at the intersection of East 30th Street and Central Avenue were logged from January 14, 2014 through November 1, 2016. Additionally, Coleman averred that no records were found regarding any excavation, resurfacing or major road repair at that intersection from September 15, 2015 to September 25, 2016.

{¶ 26} Accordingly, the Powells have failed to satisfy its reciprocal burden of demonstrating the existence of a genuine issue of material fact that the depression in the crosswalk rendered the roadway in a state of disrepair.

{¶ 27} Regarding the steel plate, the Powells have not presented any argument that the placement or use of the steel plate, itself, over the excavation site created a hazardous or dangerous condition. Instead, the Powells contend that the city's failure to taper the edges of the steel plate rendered the roadway in disrepair. In support, the Powells rely on the affidavit and expert report from Thomas M. Lyden, a civil engineer and forensic expert with Robson Forensic, Inc., who opined that the city violated standards of care in its placement and maintenance of the steel plate. Specifically, he opined that the city workers failed to (1) taper the edges of the

steel plate to create a transition between the roadway elevation and the road plate elevation, (2) add a skid resistant surface on the steel road plate; and (3) place advanced warning signs of the existence of the steel plate in the roadway. He stated that these violations rendered the usage of the steel plate unsafe, specifically for motorcyclists. In support, Lyden identified various standards used in Charleston, South Carolina; Tempe, Arizona; and Montgomery County, Maryland. Lyden, however, did not rely on any standards governing the state of Ohio, the city of Cleveland, or Cuyahoga County; and the Powells have not provided any additional evidence that the city failed to follow the standards of care as required by the city or the state of Ohio.

{¶ 28} In contrast, the city's expert, Bonita G. Teeuwen, director of municipal and transportation engineering with Osborn Engineering, opined that based on her review of the "current published standards within the state of Ohio and the city of Cleveland," the city's workers "performed their tasks within reasonably accepted practice of their trade." Teeuwen opined that the city's placement of a steel plate over the excavation site and decision not to taper the edges of the steel plate or place advance warning signs of the existence of the steel plate in the roadway, were not inconsistent "with the guidance as documented in the accepted standards of roadway steel plate placement."

{¶ 29} In *Ruckman v. Smith*, 190 N.E.3d 707, 2022-Ohio-1813 (11th Dist.), the court stated that whether a road was unreasonably unsafe for a motorcyclist is not directly related to whether the road was in repair. *Id*. at ¶ 26-27. In *Ruckman*,

a motorcyclist encountered a 1.5-inch-deep milled trench in the pavement, which experts opined made the road unreasonably unsafe for motorcyclists. The court stated that "[t]he threshold question is not a question of safety. Instead, it is a question of whether the road was 'in repair.'" *Id.* at ¶ 27.

> We are mindful that the General Assembly has provided exceptions to immunity for roads "in repair" and obstructions in public roads while excluding an exception to immunity for nuisance conditions. If the Legislature intended for exceptions to immunity to include a road that is hazard free, without blemish, reasonably safe, or some other similar term, it would have spoken. In short, unreasonably unsafe, or other similar concepts are not the basis for an exception to immunity.

*Id.* at ¶ 28. As the Eleventh District noted, "to claim that a road is unsafe for motorcyclists is not the same as providing evidence that the road was not in good or sound condition." *Id.* at ¶ 33. The same holds true in the case before this court. Lyden's report focused on the "dangerous conditions" that "have long been recognized as a hazard to motorcycles." His expert report does not opine that the roadway itself was in a state of disrepair.

{¶ 30} Accordingly, the Powells have failed to withstand their reciprocal burden of demonstrating a genuine issue of material fact that the city's failure to taper the edges of the steel plate violated any standard that the city was obligated to follow as required by the state of Ohio, Cuyahoga County, or city of Cleveland.

{¶ 31} Moreover, even if Lyden's report established that the city failed to follow applicable industry standards, his report does not create a genuine issue of material fact as to whether the condition of the steel plate rendered the roadway in a state of disrepair. Lyden opined that the steel plate did not have tapered edges to

create a smoother transition from roadway to the steel plate. However, the Powells' accident reconstruction expert opined during deposition that Maurio's motorcycle did not come into contact with the steel plate at all, affirmatively "rejecting" Powell's own testimony in which he speculated that he came into contact with the plate. *Compare* Myers deposition p. 28-29 *with* Maurio's deposition p. 53-54 ("when I leaned to shift around the plate, that's when the dip came in; the tires I'm assuming caught the plate and caused me to overcompensate into the concrete.") In fact, it was Myers's opinion that Maurio's attempt to avoid the steel plate contributed to him losing control of his motorcycle.

{¶ 32} Lyden further opined that the city's failure to add a skid resistant surface to the steel plate violated a standard of care. However, it is undisputed that the weather conditions were not adverse and Maurio did not drive over the steel plate, thus creating a need for a skid resistant surface.

{¶ 33} Finally, Lyden's opinion that the failure to place advance warning signs of the steel plate violated a standard of care is immaterial because Maurio admitted that he saw the steel plate in the roadway after he turned onto East 30th Street; thus, making the advance decision to maneuver around the steel plate. *See Penn v. Regional Transit Auth.*, 8th Dist. Cuyahoga No. 109660, 2021-Ohio-2102, ¶ 27 (no duty to give advanced warning of an open-and-obvious condition).

{¶ 34} Accordingly, Lyden's report does not create a genuine issue of material fact regarding whether the roadway was in a state of disrepair due to the presence or condition of the steel plate in the roadway.

{¶ 35} The Powells rely heavily on this court's decision in *Todd* to support its contention that the placement of the steel plate and the presence of the dip in the roadway created a hazardous condition. *Todd*, 8th Dist. Cuyahoga No. 98333, 2013-Ohio-101. In *Todd*, the plaintiff damaged her vehicle after encountering numerous potholes in a roadway that was near a city impound lot. *Todd* is readily distinguishable because the alleged hazardous conditions in the roadway were potholes, and it is well-established that a pothole in the roadway may qualify as a hazardous condition. *Id.* at ¶ 15, citing *Crabtree*, 196 Ohio App.3d 546, 2011-Ohio-5612, 964 N.E.2d 473, at ¶ 27, citing *Bonace*, 179 Ohio App.3d 736, 2008-Ohio-6364, 903 N.E.2d 683, at ¶ 29; *see also Gomez v. Cleveland*, 8th Dist. Cuyahoga No. 97179, 2012-Ohio-1642, ¶ 9 (potholes in roadways are potentially hazardous conditions). Accordingly, the issue in *Todd* of whether the road was in a state of disrepair was not at issue. Rather, the salient issue in *Todd* was whether the city had notice of the existence of the potholes in the city street due to its proximity to a city impound lot. *Todd* at ¶ 18.

{¶ 36} In this case the roadway did not contain any potholes and no one characterized the dip or depression in the roadway as a pothole or that the roadway was deteriorating or crumbling. In fact, during deposition Maurio stated that both the steel plate and depression were "imperfections." And unlike in *Todd*, no testimony was presented that motorists had to swerve to avoid the depression, or that cars were damaged as a result of directly driving over the depression. Accordingly, reliance on *Todd* does not support the Powells' argument on appeal.

{¶ 37} The Powells' reliance on *Lakota*, 11th Dist. Ashtabula No. 2015-A-0010, 2015-Ohio-3413, is also inapposite. In *Lakota*, the Eleventh District, determined that the city was not entitled to summary judgment based on immunity in a motorcyclist's negligence action because there was a factual issue whether the road, which had pending and ongoing repairs, constituted a road "in repair." The city was in the process of repairing the sinkhole and excavated area, but the gravel used to fill the sinkhole had created a six- to eight-inch exposed depression in a public road. The motorcyclist encountered the depression, and when he attempted to swerve around it, his front tire caught the edge, causing it to blow out. The rider crashed his motorcycle and suffered injuries as a result. Based on testimony that a six- to eight-inch hole does not constitute a road "in good repair," the court held that "a repair that causes an additional danger to drivers cannot create a road that is 'in repair.'" *Id* at ¶ 30.

{¶ 38} Here, the Powells presented no evidence that the depression in the roadway was caused by the city workers repairing the water break that occurred beneath the roadway. Maurio admitted at deposition that the dip in the roadway was not a result of the construction being done in the roadway. (Tr. 56.) And the city presented undisputed evidence that it had not done any excavation, resurfacing, or major road repair at that intersection from September 15, 2015 to September 25, 2016. Accordingly, *Lakota* is factually distinguishable.

{¶ 39} In so far as the Powells rely on *Lakota* to support their argument that the roadway was not in a state of repair because of the ongoing repair of the water-

line break, we find the reliance misplaced. *Lakota* involved an exposed, gravel-filled, six- to eight-inch depressed excavation area in the roadway that city workers created. In this case, the excavation site was not exposed and was temporarily covered by a one-inch steel plate. The Powells have not made any allegation that the excavation and repair work under the steel plate created a dangerous or hazardous condition.

{¶ 40} "A municipality, as a matter of law, cannot be held responsible as to every depression, difference in grade or unevenness in its streets and sidewalks." *Walker v. Parma*, 8th Dist. Cuyahoga No. 60540, 1991 Ohio App. LEXIS 2573, 9 (May 30, 1991), citing *Deckant*, 155 Ohio St. 498, 99 N.E.2d 609. In *Kimball v. Cincinnati*, 160 Ohio St. 370, 116 N.E.2d 708 (1953), the Ohio Supreme Court reiterating its *Deckant* holding, and agreeing with the New York High court, quoted:

> "We think we may take judicial notice of the fact which ordinary observation discloses that there is scarcely a rod in the streets of any city in which there may not be discovered some little unevenness or irregularity in sidewalks, crosswalks, curbs, or pavements. As the result of various causes, climatic and otherwise, they are constantly occurring and recurring. Ordinarily they cause no difficulties, and it would require a vast expenditure of money to remove them all."

*Id*. at 373-374, quoting *Gastel v. New York*, 194 NY 15, 86 N.E. 833 (1909). We agree. Natural wear and tear, and road dips or depressions are conditions that motorists encounter in the normal and everyday travel of streets in and around the city. And without some evidence that the depression that Maurio encountered was beyond these normal conditions, or that the city's usage of the steel plate, itself,

caused an additional hazard, this court cannot find a genuine issue of material fact that an exception exists to abrogate the city's general immunity.

{¶ 41} Accordingly, the Powells have failed to satisfy their reciprocal burden of presenting evidence to establish a genuine issue of material fact regarding whether the roadway was in a state of disrepair to trigger the immunity exception found in R.C. 2744.02(B)(3).

### 2. Obstruction

{¶ 42} In its second assignment of error, the Powells contend that the trial court erred in granting summary judgment in favor of the city "when it held that a metal plate could not be an obstruction as a matter of law." As part of their argument within this assignment of error, the Powells additionally assert that the presence of the dip in the roadway constitutes an obstruction or "the combination of the two factors, the dip in the road and the steel plate, combined to create a set of circumstances where an obstruction occurred."

{¶ 43} The city argued in support of summary judgment that neither the steel plate nor the dip in the roadway are obstructions under the meaning of R.C. 2744.02(B)(3). Specifically, the city relied on *Howard*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311. In *Howard*, a 16-year-old boy died when he lost control of his vehicle when it hit "black ice" that had formed on the roadway after the fire department had performed various water-related training exercises in the area. *Id.* at ¶ 3-14. The appeals court found that the "icy mixture" on the road was an "obstruction" that the city had a duty to remove because it was an "object that has

the potential of interfering with the safe passage of motorists." *Id*. The Supreme Court rejected this overly broad definition, relying on the legislative history of R.C. 2744.02(B)(3), which is also relevant to our review of this case.

{¶ 44} In 2003, the General Assembly amended R.C. 2744.02(B)(3) by removing the terms "free from nuisance" and adding "remove obstructions" from the description of the type of roadway condition that would defeat political subdivision immunity. The *Howard* Court concluded that "the General Assembly purposely replaced the phrase 'free from nuisance' with 'other negligent failure to remove obstructions,'" and that "the legislature's action in amending R.C. 2744.02(B)(3) was not whimsy but a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways." *Id*. at ¶ 25-26. The court concluded that, for purposes of R.C. 2744.02(B)(3), an "obstruction" is an impediment that "blocks or clogs the roadway and not merely a thing or condition that hinders or impeded the use of the roadway or that may have the potential to do so." *Id*. at ¶ 30.

{¶ 45} Relying on the *Howard* framework, the city contends that neither the steel plate or dip in the roadway, or the two in combination, are "obstructions" because the record contains no evidence to create a question of fact that the steel plate or the dip completely blocked or clogged traffic on East 30th Street or Central Avenue.

{¶ 46} The Powells opposed summary judgment, contending that a genuine issue of material facts exists whether the steel plate or dip in the roadway constituted

an obstruction. In support, the Powells relied on *Crabtree*, 2011-Ohio-5612, 964 N.E.2d 433. In *Crabtree,* the Tenth District concluded that the "obstruction" definition created in *Howard,* 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, did not just encompass immovable objects. *Crabtree* at ¶ 26. The court determined that the presence of heavy brush, damp and muddy areas, and the existence of potholes on the side of the road, that forced the plaintiff-bicyclist to ride further from the curb, might very well create an obstacle for bicyclists, thus creating a genuine issue of material fact. *Id*. at ¶ 26, 29.

{¶ 47} We do not find *Crabtree* persuasive in this situation because it is factually distinguishable. Most importantly, the plaintiff in *Crabtree* was a bicyclist. Unlike the *Crabtree* plaintiff, Maurio was operating a motorcycle with full access to the entire lane of travel. Additionally, Maurio did not encounter the presence of any potholes, muddy or damp road conditions, or objects that visually impaired or intentionally forced Maurio out of his lane of traffic.

{¶ 48} We find that the Powells have not presented any evidence to create a genuine issue of material fact that the dip in the roadway, the steel plate, or a combination of the two, were obstructions as contemplated in R.C. 2744.02.

{¶ 49} Regarding the depression in the roadway, the Powells' accident reconstruction expert testified at deposition that the flow of traffic was not impeded by the depression in the crosswalk and that the depression did not block cars from traveling on East 30th Street. (Myers Deposition Tr. 44-45.) Regarding the steel plate, no one opined that the use of the steel plate to cover an excavation site is, by

its very nature, an obstruction. In fact, Maurio testified that the presence of the steel plate was not unusual and he had seen steel plates in roadways "a thousand times." (Deposition, Tr. 113.) He further admitted that he had never been instructed to avoid or not ride over a steel plate. *Id.* Additionally, the Powells' accident reconstructionist opined that based on his assessment of the accident, Maurio did not even come into contact with the steel plate — the alleged obstruction.

{¶ 50} The Powells have not presented any evidence or supporting case law that the temporary placement of the steel plate or other safety protections over excavated areas are the types of obstructions contemplated by the General Assembly to impose liability on a political subdivision. Accordingly, the Powells have failed to satisfy their reciprocal burden of presenting evidence to establish a genuine issue of material fact regarding whether the steel plate or dip were obstructions to remove immunity from the city under this exception. The second assignment of error is overruled.

{¶ 51} Because we find that no exception applies to the city's general immunity in R.C. 2744.02(A)(1), the trial court did not err in granting summary judgment in favor of the city.

## IV. Negligent Failure to Warn of Dangerous Hazardous Conditions

{¶ 52} In their third assignment of error, the Powells contend that the trial court erred in failing to consider whether the failure to place signs warning of the dip or the plate were proprietary functions of government and whether the city's failure to place such signs could have amounted to negligence. Within this

assignment of error, the Powells raise two separate issues — (1) whether the failure to place signs warning of the dip or the plate were proprietary functions of government; and (2) whether the city's failure to place such signs could have amounted to negligence.

{¶ 53} Regarding the first issue, the Powells did not make any argument with the trial court that the city's failure to place warning signs of the dip in the roadway or the steel plate were proprietary functions. It is well settled that arguments raised for the first time on appeal will not be considered by an appellate court. *Gardi v. Bd. of Edn.*, 8th Dist. Cuyahoga No. 99414, 2013-Ohio-3436, ¶ 27, citing *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81, 679 N.E.2d 706 (1997). Motions for summary judgment are no different: "although we review summary judgment decisions de novo, 'the parties are not given a second chance to raise arguments that they should have raised below.'" *Hamper v. Suburban Umpires Assn.*, 8th Dist. Cuyahoga No. 92505, 2009 Ohio 5376, ¶ 27, quoting *Perlmutter v. People's Jewelry Co.*, 6th Dist. Lucas No. L-04-1271, 2005-Ohio-5031.

{¶ 54} Although the Powells generally argued in the trial court that the city was negligent in failing to warn of the alleged hazardous conditions, the Powells did not assert any argument that this failure was a proprietary function of the city, or assert in the trial court that the exception found in R.C. 2744.02(B)(2) abrogates the city's general immunity. Accordingly, this argument will not be addressed in this appeal.

{¶ 55} As to the second issue regarding the trial court's failure to determine whether the failure to place warning signs of hazardous conditions could have amounted to negligence, we find that the trial court did not err. This court has already determined that neither the steel plate nor the dip in the roadway were obstructions or potentially hazardous conditions to render the roadway in disrepair. The exception found in R.C. 2744.02(B)(3) only removes immunity under two instances — (1) negligent failure to keeps roads in repair; and (2) negligent failure to remove obstructions. Neither of these exceptions involve a negligent failure to warn of conditions that are not considered hazardous conditions or obstructions. Accordingly, a failure to warn of conditions that are outside the scope of R.C. 2744.02(B)(3) cannot abrogate a city's immunity. *See Ruckman*, 190 N.E.3d 707, 2022-Ohio-1813 (a discretionary sign is not statutorily part of the roadway; the use of incorrect discretionary signage does not constitute an exception to immunity under R.C. 2744.02(B)(3)).

{¶ 56} Having previously determined that the steel plate and the dip in the roadway were not hazardous conditions or obstructions, this court does not need to determine whether the city was negligent. Nevertheless, we note that the city's decision to not place a sign warning a motorist of a steel plate in the roadway cannot be deemed negligent when Powell admitted that he saw the metal plate in the road upon approaching the intersection of East 30th Street and Central Avenue. Accordingly, by Powell's own admission, the steel plate was not latent but rather an open-and-obvious condition, and there is no duty to warn regarding an open-and-

obvious condition. *Penn*, 8th Dist. Cuyahoga No. 109660, 2021-Ohio-2102, at ¶ 27, citing *Armstrong v. Best Buy Co. Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088.

{¶ 57} The Powell's third assignment of error is overruled.

{¶ 58} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR