[Cite as *Goldfarb v. Cuyahoga Cty. Dept. of Pub. Works*, 2025-Ohio-3283.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

AUSTIN GOLDFARB,                                  :

    Plaintiff-Appellee,                     :

                                No. 114721

    v.                                          :

CUYAHOGA COUNTY,                                 :
DEPARTMENT OF PUBLIC WORKS,

                                     :

    Defendant-Appellant.

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED
**RELEASED AND JOURNALIZED:** September 11, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-991175

---

### *Appearances:*

Taubman Law and Bruce D. Taubman, *for appellee.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Regina A. Russo and Michael J. Stewart, Assistant Prosecuting Attorneys, *for appellant.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Appellant Cuyahoga County Department of Public Works ("the County") appeals the judgment of the trial court denying summary judgment on appellee Austin Goldfarb's ("Goldfarb") complaint for negligence. The County

assigns one error for our review: the trial court erred when it denied the County's motion for summary judgment, denying it the benefit of political-subdivision immunity under R.C. Ch. 2744. After a thorough review of the applicable law and facts, we reverse the judgment of the trial court.

## I. Factual and Procedural History

{¶ 2} Goldfarb owns a home on West 45th Street in Parma, Ohio. In August 2021, Goldfarb called the County to investigate an odor in his home. Approximately one week later, employees of the County's Department of Public Works' Lateral Service Department came to Goldfarb's home. They observed that a sanitary tee, which gave the County access to the lateral line of the sewer system, was broken. In order to repair the issue, the workers had to pull out a "plug" of grass and dirt in Goldfarb's front yard.

{¶ 3} Two days later, the County's construction crew went to Goldfarb's home to replace the broken tee. The construction crew determined that the sanitary tee was not actually broken but that the lateral line was blocked with grease. The construction crew then asked the Sanitary Jet Department to remove the grease and debris from the lateral line. The Jet Department came to Goldfarb's property to perform the work three days later.

{¶ 4} Either Goldfarb or his fiancée were at home for two of the three visits by the County workers. However, Goldfarb did not know what work had been performed and did not check his lawn to see where the repair had been made. He was aware, though, that the issue that had caused the odor had been remedied.

{¶ 5} Over the next several weeks, Goldfarb continued to use his yard and mow his lawn. He noticed that the grass was discolored where the repair work had taken place. The grass on the plug was dead and looked different than the grass around it.

{¶ 6} Approximately five weeks after the work in his yard had been performed, Goldfarb walked across the yard in the early morning hours to get to his vehicle, which was parked on the street, in order to go to work. While he was walking in the yard, Goldfarb fell on his lawn, injuring his ankle, leg, and back. He surmised that he had fallen in the place where the County workers had removed the "plug" from his lawn. Later that day, he took pictures of the area where he had fallen.

{¶ 7} Goldfarb filed a complaint against the County alleging that he was injured after the County "failed to observe due care and properly repack the hole that was dug to fix the water line." Goldfarb asserted that the County was reckless, careless, and negligent.

{¶ 8} The County answered Goldfarb's complaint, denying the allegations and raising the defense of political-subdivision immunity under R.C. Ch. 2744. The County filed a motion for summary judgment, arguing that it was immune from liability because the workers were engaging in a governmental function. It further argued that even if the workers were engaged in a proprietary action, Goldfarb's claim would still fail because he could not demonstrate the negligence exception to immunity under R.C. 2744.02(B)(2). Specifically, the County asserted that (1) Goldfarb did not offer any expert testimony to establish the appropriate standard

of care; and (2) Goldfarb was comparatively negligent because the hazard was open and obvious. In support of its motion, the county offered the deposition testimony of Goldfarb, along with an affidavit and deposition testimony of Michael Holt ("Holt"), a sewer maintenance supervisor at the County.

{¶ 9} In his affidavit, Holt referred to the Sewer Maintenance Division's Standard Operating Procedures Manual ("manual"), which was also attached to his affidavit. He explained that the manual "describes step-by-step actions employees must take to perform the various tasks of the Division." (Holt Affidavit, ¶ 8.) Holt did not describe the actual work performed at Goldfarb's residence but outlined the standard operating procedure from the manual for performing the type of work that was done at Goldfarb's residence. He stated the following:

> 10. LS-01 in Exhibit B describes the standard operating procedure for locating storm and/or sanitary test tees on an owner's property.
>
> 11. On page 5 of LS-01 in Exhibit B, the standard operating procedure states, "[o]nce test tees have been located, place sewer lateral test tee caps back on each test tee and when necessary, replace in kind/cover each test tee with dirt/grass."
>
> 12. It is standard operating procedure for the Department of Public Works to replace in kind/cover each test tee with dirt/grass, essentially replacing exactly what they took out of the area. This generally involves a "plug" of sod material that has been removed.

(*Id*. at ¶ 10-12.)

{¶ 10} Holt further stated in his affidavit that he had observed the photographs Goldfarb had taken of the area where the work had been performed and, "[i]n [his] opinion, the area was normal and provided no unnecessary danger

to the homeowner." (*Id*. at ¶ 13.) He additionally averred that the pictures "reflect[ed] a minor disturbance, not one that would necessitate lawn repair." (*Id*. at ¶ 14.)

{¶ 11} Goldfarb filed a brief in opposition to the motion for summary judgment, arguing that the County had a duty to properly refill and repack the hole that it had dug in his yard. He asserted that there was a genuine issue of material fact as to whether the County breached that duty by improperly repairing the hole. Goldfarb offered his own affidavit in support, wherein he acknowledged that he had mowed his lawn using a self-propelled mower several times between the maintenance repair and the day of his injury but denied that the repaired hole was open and obvious. He stated in his deposition that he had "probably" noticed the area where the repair had been made and said that it "just looked different." He further offered photographs of the area that he took after he fell, demonstrating the size and visibility of the repaired area.

{¶ 12} In his brief, Goldfarb argued that he did not need expert testimony to support his simple negligence claim. Further, Goldfarb objected to the County's use of Holt as an expert witness, arguing that he had no education or training beyond that of normal work experience that would have qualified him as an expert. Moreover, Holt did not work on the project at Goldfarb's residence nor did he ever visit the property after the fact.

{¶ 13} The County filed a reply brief, arguing that Goldfarb failed to demonstrate a genuine issue of material fact and that Goldfarb did not address its

arguments that the County was engaged in a governmental function or that Goldfarb was comparatively negligent.

{¶ 14} The trial court denied the motion for summary judgment, finding that genuine issues of material fact existed. The County then filed the instant appeal.

## II. Law and Analysis

### A. Summary Judgment

{¶ 15} Preliminarily, we note that an order denying a motion for summary judgment is not typically a final, appealable order. *Ceasor v. E. Cleveland*, 2018-Ohio-2741, ¶ 13 (8th Dist.), citing *Hubbell v. Xenia*, 2007-Ohio-4839, ¶ 9, citing *State ex rel. Overmeyer v. Walinski*, 8 Ohio St.2d 23, 24 (1966). However, R.C. 2744.02(C) provides:

> An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order.

{¶ 16} A trial court's decision on a motion for summary judgment is subject to de novo review. *Garmback v. Cleveland*, 2022-Ohio-1490, ¶ 16 (8th Dist.), citing *Johnson v. Cleveland City School Dist.*, 2011-Ohio-2778, ¶ 33 (8th Dist.). "In a de novo review, 'we afford no deference to the trial court's decision and independently review the record to determine whether the denial of summary judgment is appropriate.'" *Id.*, quoting *Johnson* at ¶ 53, citing *Hollins v. Shaffer*, 2009-Ohio-2136, ¶ 12 (8th Dist.).

{¶ 17} A court grants summary judgment when "(1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only reach one conclusion, which is adverse to the nonmoving party." *Ceasor* at ¶ 15, citing *Hull v. Sawchyn*, 145 Ohio App.3d 193, 196 (8th Dist. 2001).

{¶ 18} "The party moving for summary judgment bears the initial burden of apprising the trial court of the basis of its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claim." *Willow Grove, Ltd. v. Olmsted Twp.*, 2015-Ohio-2702, ¶ 14-15 (8th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). "Once the moving party meets its burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue of material fact exists." *Id.*, citing *id.* "To satisfy this burden, the nonmoving party must submit evidentiary materials showing a genuine dispute over material facts." *Id.*, citing *PNC Bank v. Bhandari*, 2013-Ohio-2477 (6th Dist.).

### B.  Political-Subdivision Immunity

{¶ 19} Based on the foregoing, we must examine the record to see whether the County was entitled to political-subdivision immunity as a matter of law, i.e., that there were no genuine issues of material fact that would prevent the County from receiving immunity.

{¶ 20} The Political Subdivision Tort Liability Act, codified in R.C. Ch. 2744, sets forth a three-tier analysis for determining whether a political subdivision is immune from liability for injury or loss to property. *Colbert v. Cleveland*, 2003-Ohio-3319. In the first tier of the analysis, the court applies the general rule provided in R.C. 2744.02(A)(1), which states that a political subdivision is "not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶ 21} The second tier of the analysis places the burden on the plaintiff to overcome this statutory immunity by showing that one of the five exceptions contained in R.C. 2744.02(B) applies. *Powell v. Cleveland*, 2022-Ohio-4286, ¶ 10 (8th Dist.). If any of the exceptions enumerated in R.C. 2744.02(B) apply, the court proceeds to the third tier of the analysis and determines whether any of the defenses enumerated in R.C. 2744.03 applies to provide the political subdivision a defense against liability. *Smith v. McBride,* 2011-Ohio-4674, ¶ 15. "If none of the five exceptions applies, the immunity analysis ends without proceeding to the third tier." *Penn v. Regional Transit Auth.*, 2021-Ohio-2102, ¶ 21 (8th Dist.), citing *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 2008-Ohio-2567, ¶ 32.

{¶ 22} The immunity provided in R.C. 2744.02(A)(1) applies to political subdivisions engaged in a governmental or proprietary function. R.C. 2744.02(A)(1). There is no dispute that the County qualifies as a political subdivision. There is, however, a dispute as to whether the County was engaged in

a governmental or proprietary function. The County contends that the design of the sewer line was the true issue and that designing a sewer line constitutes a governmental function; Goldfarb asserts that the County was engaged in the proprietary function of repairing the sewer line.

{¶ 23} R.C. 2744.01(C)(2)(l) identifies as a governmental function "the provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system," making these responsibilities immune from political-subdivision liability. By contrast, R.C.2744.01(G)(1)(d) identifies "the maintenance, destruction, operation, and upkeep of a sewer system" as a proprietary function for which civil liability may attach.

{¶ 24} "'Ohio courts have used the problem's remedy to determine whether actions concerning a sewer system are governmental or proprietary.'" *Fink v. Twentieth Century Homes, Inc.*, 2013-Ohio-4916, ¶ 25 (8th Dist.), quoting *Guenther v. Springfield Twp. Trustees*, 2012-Ohio-203, ¶ 18 (2d Dist.). "A complaint is properly characterized as a maintenance, operation, or upkeep issue when 'remedying the sewer problem would involve little discretion but, instead, would be a matter of routine maintenance, inspection, repair, removal of obstructions, or general repair of deterioration.'" *Coleman v. Portage Cty. Engineer*, 2012-Ohio-3881, ¶ 30, quoting *Guenther* at ¶ 18, quoting *Essman v. Portsmouth*, 2010-Ohio-4837, ¶ 32 (4th Dist.). On the other hand, a complaint alleges a design or construction issue if remedying the problem would require the

political subdivision to essentially redesign or reconstruct the sewer system. *Id.,* citing *id.,* citing *id.* at ¶ 32-33.

{¶ 25} Here, Goldfarb's negligence claim arises from the County's performance of repair work to the sewer line on Goldfarb's property. While the County contends that there was actually a design flaw — the underground location of the test tees — we cannot find that a re-design of the sewer system was required to remedy Goldfarb's injury. It is not the sewer system itself that was alleged to have injured Goldfarb but the performance of the County workers in repairing an issue with the sewer system that was causing an odor. Accordingly, we find that R.C. 2744.01(G)(1)(d) applies, and the County was engaged in a proprietary function.

{¶ 26} Thus, the County is entitled to the broad immunity under the first tier of the analysis. However, in the second tier of the analysis, R.C. 2744.02(B)(2) provides that political subdivisions may be held liable for the negligent performance of a proprietary function. In other words, the County is liable for Goldfarb's injury if the injury was caused by the negligent acts of its employees who were involved in a proprietary function. And since we have determined that the repair conducted on Goldfarb's property constituted a proprietary function, the county is liable if its employees negligently performed the repair in Goldfarb's yard, leading to his fall and resulting injuries.

## C. Goldfarb's Claim

{¶ 27} To establish a claim for negligence, the plaintiff must show the existence of a duty, a breach of that duty, and that the breach of that duty was the proximate cause of an injury. *Menifee v. Ohio Welding Prods. Inc.*, 15 Ohio St.3d 75, 77 (1984). We have held that negligence may not be presumed from the proof of injury alone. *Riveredge Dentistry Partnership v. Cleveland*, 2021-Ohio-3817, ¶ 24 (8th Dist.). To survive summary judgment, the plaintiff must establish a prima facie case of negligence that creates a genuine issue of material fact for trial. *Menifee* at 77; *Kinasz v. Diplomat Healthcare*, 2016-Ohio-2949, ¶ 21-22 (8th Dist.).

{¶ 28} Whether a duty exists is a question of law. *Masterson v. Brody*, 2022-Ohio-3430, ¶ 44, citing *Mussivand v. David,* 45 Ohio St.3d 314, 318 (1989). "Whether the defendant properly discharged a duty becomes a jury question when a plaintiff establishes a duty is owed him and offers evidence showing the defendant breached that duty." *DeBarr v. Cleveland*, 2023-Ohio-4121, ¶ 30 (8th Dist.), citing *Blancke v. New York Cent. R. Co.*, 103 Ohio St. 178, 185-186 (1921), paragraph three of the syllabus.

{¶ 29} "The burden is on the plaintiff to prove by a preponderance of the evidence that the defendant failed to exercise the care that a reasonably prudent person is accustomed to exercise under the same or similar circumstances." *Riveredge Dentistry Partnership v. Cleveland*, 2021-Ohio-3817, ¶ 24 (8th Dist.), citing *Republic Light & Furniture Co. v. Cincinnati*, 97 Ohio App. 532, 536-537 (1st Dist. 1954). Where the standard of care is not a matter of common knowledge to a

jury, the plaintiff bears the burden of introducing substantial evidence from which a jury may reasonably infer the standard of care that is appropriate to the situation established by the evidence. *Nelson v. Cleveland*, 2013-Ohio-493, ¶ 22 (8th Dist.), citing *Republic Light* at 536-537, citing *Englehardt, a Minor v. Philipps*, 136 Ohio St. 73 (1939). "The trier of fact may not speculate as to what the standard of care should be." *Nelson* at *id.*

{¶ 30} In its motion, the County argued there was no evidence that it was negligent in its actions in response to Goldfarb's request to repair the odor problem on his property. The County presented Holt's affidavit, along with the County's "Sewer Maintenance Division Standard Operating Procedures Manual," which outlined the steps the County workers were to take in conducting the repair on Goldfarb's property. The County maintained that Goldfarb was required to present expert testimony establishing the appropriate standard of care, which he failed to do. Additionally, the County argued that Goldfarb was comparatively negligent because the hazard was open and obvious.

{¶ 31} In response to the motion, Goldfarb argued that the County had a duty to properly repair his yard after grass and dirt were removed in order for the County to repair the sewer system issue that was causing an odor. Goldfarb maintained that the County breached its duty by not returning the yard to its "original, hazard-free condition" after the repairs. However, Goldfarb has not presented any evidence as to the standard of care for such a repair.

{¶ 32} Goldfarb asserted that expert testimony was not necessary for a lay person to determine whether a hole was properly refilled and repacked. He argued that "[a]ny lay person can look at the hole in [the photos attached to his brief in opposition to the motion for summary judgment] and see it is not a smooth, hazard-free yard anymore after the maintenance by [the County]." He also asserted that "a lay person possesses the knowledge and experience of what a properly refilled hole in a yard looks like[ ]" and that "[l]ay persons have experience doing routine yard work which requires occasionally digging up a hole in the yard similar to the size of the hole in this case . . . ."

{¶ 33} The only evidence that Goldfarb presented regarding the standard of care of the County's alleged breach was his own self-serving affidavit and photos of the repair site. In his affidavit, he makes the conclusory statement that the County's negligence caused him to fall in the "improperly repacked" hole. (Brief in Opposition to Defendant's Motion for Summary Judgment, Goldfarb Affidavit, ¶ 3.) An affidavit submitted in opposition to a motion for summary judgment must contain more than general, conclusory assertions in order to create a genuine issue of material fact for trial:

> "'Generally, a party's unsupported and self-serving assertions, offered by way of affidavit, standing alone and without corroborating materials under Civ.R. 56, will not be sufficient to demonstrate material issues of fact. Otherwise, a party could avoid summary judgment under all circumstances solely by simply submitting such a self-serving affidavit containing nothing more than bare contradictions of the evidence offered by the moving party.'"

*Jochum v. Listati,* 2019-Ohio-166, ¶ 19 (8th Dist.), quoting *Davis v. Cleveland,* 2004-Ohio-6621, ¶ 23 (8th Dist.), quoting *Bell v. Beightler*, 2003-Ohio-88, ¶ 33 (10th Dist.).

{¶ 34} Goldfarb presented three pictures of the area where the repair was made as an exhibit to his affidavit. He stated in his brief opposing the motion that these photographs show that "the area of the improperly packed hole was loose, extremely uneven, and unmarked." The photographs he submitted show the size and visibility of the hole in the yard. The pictures presented by Goldfarb do not reflect a significant amount of unevenness in the ground around the repair work. The line around the "plug" that the workers dug out is visible, but from the pictures, it cannot be discerned whether the area was "loosely packed," as claimed by Goldfarb. While Goldfarb stated in his deposition that the hole was "about 4 inches deep," the photographs simply do not support this statement. (Goldfarb Depo. p. 26.) The photographs reflect minor unevenness of the ground with a circular line depicting where the "plug" of grass had been removed and replaced.

{¶ 35} During his deposition, Holt was shown photographs of the repaired area and stated that the photographs showed a "properly-filled" area. (Holt Depo. p. 43, 45.) When asked what he based his opinion on, Holt stated that "it appear[ed] they pulled a plug out to – a plug out from the ground to access the clean-out, then they reinserted the plug back in place." (*Id.*) He was asked whether the crew could have refilled the area with extra dirt, and he said no, because the crew did not normally bring dirt to the job. Further, he explained that "if [the crew] had felt that

a lawn repair was needed, they would have noted that it would turn back over to Construction for a lawn repair[,]" which did not happen here. (*Id.* at 48.)

{¶ 36} Goldfarb further argues that the County violated R.C. 6123.14, which states: "All public or private property damaged or destroyed in carrying out the powers granted by this chapter shall be restored or repaired and placed in its original condition, as nearly as practicable, or adequate compensation shall be paid therefor from funds provided under this chapter."[1] However, this argument was not raised in the trial court. It is well-settled that issues not raised in the trial court may not be raised for the first time on appeal. *Crenshaw v. Cleveland Law Dept.*, 2020-Ohio-921, ¶ 42, fn. 6 (8th Dist.), citing *Shadd v. Cleveland Civ. Serv. Comm.*, 2019-Ohio-1996, ¶ 27 (8th Dist.) ("Appellants cannot raise an issue for the first time on appeal that they did not raise to the trial court."); *Scott Fetzer Co. v. Miley*, 2019-Ohio-4578, ¶ 41 (8th Dist.) ("A party cannot raise new issues or arguments for the first time on appeal; failure to raise an issue before the trial court results in a waiver of that issue for appellate purposes.").

{¶ 37} The mere fact that Goldfarb fell and was injured in the area that had been repaired is not enough to establish that the County acted negligently in performing the repair to his yard. There is no evidence in the record for a trier of fact to determine how the County should have conducted the repair or whether the County's repair to Goldfarb's yard was unreasonable. We find no merit to Goldfarb's

---

[1] R.C. Ch. 6123 is entitled "Solid Waste and Energy Resources Development Projects."

assertion that the standard of care with regard to repacking holes is common knowledge. Since Goldfarb did not establish a standard of care that the County violated, he has failed to demonstrate a genuine issue of material fact.

{¶ 38} Because Goldfarb cannot establish a negligence claim, none of the exceptions to immunity under R.C. 2744.02(B) apply and the court should have determined that the County was entitled to political-subdivision immunity. Accordingly, the trial court erred in denying the County's motion for summary judgment and the County's sole assignment of error is sustained.

{¶ 39} Judgment reversed.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
DEENA R. CALABRESE, J., CONCUR