[Cite as *Phillips v. Independence*, 2025-Ohio-5511.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JEFFREY PHILLIPS,                    :

    Plaintiff-Appellant,         :

    v.                           :        No. 114685

CITY OF INDEPENDENCE,                :

    Defendant-Appellee.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 11, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-986133

---

### *Appearances:*

Michael Shaut & Associates, LPA, and Michael Shaut, *for appellant*.

Taft, Stettinius & Hollister LLP, Gregory J. O'Brien, City of Independence Law Director, and Jack Miab, *for appellee*.

WILLIAM A. KLATT, J.:

{¶ 1} Plaintiff-appellant Jeffrey Phillips ("Phillips") appeals from the trial court's December 13, 2024 judgment entry granting defendant-appellee City of Independence's ("the city" or "Independence") motion for summary judgment

based on political-subdivision immunity under R.C. Ch. 2744. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} This case stems from a motor vehicle accident that occurred on October 5, 2021. That morning, Phillips was driving down Brecksville Road in Independence, Ohio, when his vehicle left the road, hit the shoulder of the road, and hit a mailbox and temporary fencing that had been installed on the west side of Brecksville Road. Phillips's vehicle drove through the temporary fence and partially into a steep embankment. A steel rod from the temporary fencing penetrated Phillips's windshield, striking Phillips in the head and causing him to lose consciousness and suffer severe head and brain trauma.

{¶ 3} On September 27, 2023, Phillips filed a complaint against Independence, alleging one count of deliberate indifference and one count of negligence related to the conditions surrounding the accident.

{¶ 4} On November 27, 2023, the city filed an answer and motion to dismiss.

{¶ 5} On January 24, 2024, Phillips filed a motion for leave to file an amended complaint. On February 2, 2024, Phillips filed a motion for leave to file a second amended complaint instanter with the city's consent; the trial court granted this motion. The second amended complaint added Elizabeth Hrovat ("Hrovat"), State Farm Insurance Company ("State Farm"), Gauis S. Vaduva ("Vaduva"), and Rachel Veronica ("Veronica") as new-party defendants. The second amended

complaint alleged that the accident occurred on the property of Hrovat, Vaduva, and Veronica and the fence at issue was also located on their property. None of the additional defendants are a party to the instant appeal.

{¶ 6} On October 1, 2024, the city filed a motion for summary judgment, arguing that summary judgment was appropriate because the city was entitled to the statutory immunity reserved for political subdivisions in Ohio pursuant to R.C. 2744.02.

{¶ 7} On October 29, 2024, Phillips filed a brief in opposition to the city's motion for summary judgment. On November 5, 2024, the city filed a reply brief in support of its motion for summary judgment.

{¶ 8} On December 13, 2024, the court granted the city's motion for summary judgment.

{¶ 9} Phillips appealed. He now raises four assignments of error for our review:

> I. The trial court erred by failing to address an integral question regarding the ownership of the original fence which caused the Appellant's substantial injuries.
>
> II. The trial court erred in its grant of summary judgment against Appellant's claims against when the manifest weight of the evidence demonstrated an applicable exception to Appellee's claim of political immunity under R.C. 2744.02(b)(2).
>
> III. The trial court erred in its grant of summary judgment against Appellant's claims when the manifest weight of the evidence demonstrated an applicable exception to political immunity under R.C. 2744.02(b)(4).
>
> IV. The trial court erred in its grant of summary judgment against Appellant's claims given uncontroverted expert evidence that the

failure to maintain the roadway was the actual cause of the Appellant's leaving the roadway which led to his injuries, which is an exception to political immunity under R.C. 2744.02(b)(3).[1]

## Law and Analysis

{¶ 10} R.C. Ch. 2744 sets forth a comprehensive statutory scheme for the tort liability of political subdivisions and their employees. It establishes a three-step analysis for determining whether a political subdivision is immune from liability, starting with a broad rule that a political subdivision is generally not liable in damages. *Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 2013-Ohio-2410, ¶ 11, citing *Greene Cty. Agricultural Soc. v. Liming*, 2000-Ohio-486, ¶ 25, and R.C. 2744.02(A)(1).

{¶ 11} The three-tier analysis provides:

Under the first tier of analysis, if a defendant is determined to be a political subdivision, it is immune from liability for its governmental and proprietary functions in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision . . . ." [R.C. 2744.02(A)(1).]

Under the second tier, the immunity conferred under R.C. 2744.02(A)(1) "'is not absolute, but is . . . subject to the five exceptions to immunity listed in . . . R.C. 2744.02(B).'" *Hortman* [*v. Miamisburg*, 2006-Ohio-4251,] ¶ 14, quoting *Cater* [*v. Cleveland*, 1998-Ohio-421.]

The third tier of political subdivision immunity analysis comes into operation if it is determined that one of the exceptions to immunity under R.C. 2744.02(B)(1) through (5) applies. Under the third tier, immunity can be reinstated if the political subdivision can demonstrate that one of the defenses under R.C. 2744.03 applies.

---

[1] In Phillips's statement of his assignments of error in his opening brief, he presents his assignments of error in this order. In the body of his brief, he presents them in a different order. For clarity, we will refer to the assignments of error as they are numbered here.

*Berner v. New Leaf Residential Servs.*, 2024-Ohio-1788, ¶ 14-16.

{¶ 12} Thus, in the first tier of the analysis, the court applies the general rule provided in R.C. 2744.02(A)(1) that a political subdivision is immune. *Goldfarb v. Cuyahoga Cty.*, 2025-Ohio-3283, ¶ 20. "The second tier of the analysis places the burden on the plaintiff to overcome this statutory immunity by showing that one of the five exceptions contained in R.C. 2744.02(B) applies." *Id.*, citing *Powell v. Cleveland*, 2022-Ohio-4286, ¶ 10 (8th Dist.).

{¶ 13} "'Whether a party is entitled to immunity is a question of law properly determined by the court prior to trial pursuant to a motion for summary judgment.'" *McConnell v. Dudley*, 2019-Ohio-4740, ¶ 17, quoting *Pelletier v. Campbell*, 2018-Ohio-2121, ¶ 12, citing *Conley v. Shearer*, 1992-Ohio-133.

{¶ 14} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We give no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. Pursuant to Civ.R. 56(C), the party seeking summary judgment must prove that (1) there is no genuine issue of material fact; (2) they are entitled to judgment as a matter of law; and (3) viewing the evidence in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *See also Dresher v. Burt*, 75 Ohio St.3d 280 (1996).

{¶ 15} In the context of summary judgment, "a 'material' fact is one that might affect the outcome of the case under the applicable substantive law." *Plough*

*v. Nationwide Children's Hosp.*, 2024-Ohio-5620, ¶ 30 (10th Dist.). Moreover, "'"[m]ere speculation and unsupported conclusory assertions are not sufficient"'" to meet the nonmovant's reciprocal burden under Civ.R. 56(E) to withstand summary judgment." *Brockler v. Turner*, 2025-Ohio-2367, ¶ 8 (8th Dist.), quoting *Wilmington Trust N.A. v. Boydston*, 2017-Ohio-5816, ¶ 31 (8th Dist.), quoting *Loveday v. Essential Heating Cooling & Refrigeration, Inc.*, 2008-Ohio-4756, ¶ 9 (4th Dist.).

{¶ 16} We will address the assignments of error out of order for ease of discussion.

## II. Exception to Immunity – R.C. 2744.02(B)(2)

{¶ 17} In Phillips's second assignment of error, he argues that the trial court erred in granting summary judgment to Independence because the manifest weight of the evidence demonstrated that the R.C. 2744.02(B)(2) exception to political-subdivision immunity applied.

{¶ 18} R.C. 2744.02(B)(2) provides that except as otherwise provided, "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." Thus, for R.C. 2744.02(B)(2) to remove a political subdivision's immunity, "a plaintiff must first establish the elements required to sustain a negligence action and second, that the negligence arose out of a 'proprietary function.'" *Puffenberger v. Cleveland*, 2013-Ohio-4479,

¶ 8 (8th Dist.), citing *Nelson v. Cleveland*, 2013-Ohio-493, ¶ 17 (8th Dist.), quoting *Williams v. Glouster*, 2012-Ohio-1283, ¶ 17 (4th Dist.).

{¶ 19} The activities of political subdivisions are generally categorized as either "proprietary functions" or "governmental functions" and the "mutually exclusive definitions of 'governmental function' and 'proprietary function' are set out in R.C. 2744.01." *Doe v. Cleveland Metro. School Dist.*, 2012-Ohio-2497, ¶ 26 (8th Dist.), quoting *Greene Cty. Agricultural Soc.*, 2000-Ohio-486, at ¶ 27.

{¶ 20} R.C. 2744.01(G)(1) defines a proprietary function as

a function of a political subdivision that is specified in (G)(2) of this section or that satisfies both of the following:

(a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;

(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.

R.C. 2744.01(G)(2) further provides, in relevant part, that a proprietary function includes but is not limited to the following:

(c) The establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a busline or other transit company, an airport, and a municipal water supply system . . . .

An activity cannot be both a governmental function and a propriety function; the two are mutually exclusive. *Ohio Bell Tel. Co. v. Leon Riley, Inc.*, 2010-Ohio-5371, ¶ 13 (8th Dist.).

{¶ 21} Phillips argues that this case involves a utility and thus constitutes an R.C. 2744.02(B)(2) exception. He bases this argument on a 1992 easement that

granted the city rights to "construct, maintain, repair, operate, patrol and replace a stream bank protection structure. . . ." Phillips asserts that based on this easement, the fence and ravine where the accident occurred constitute a stream bank protection structure that is classified as a utility pursuant to R.C. 2744.01(G)(2)(c).[2] In support of this assertion, Phillips points to R.C. 6117.01(A)(3), which defines "drainage facilities" as including "improvements of or for any channel, ditch, drain, floodway, or watercourse" in the context of county sewer districts. Phillips also points to an Ohio Supreme Court case in which the Court cites R.C. 6119.011(M), stating that "water management facilities" included "facilities for stream flow improvement, dams, reservoirs, and other impoundments" and "facilities for the stabilization of stream and river banks." *Northeast Ohio Regional Sewer Dist. v. Bath Twp.*, 2015-Ohio-3705, ¶ 18.

{¶ 22} While the city does not dispute that the 1992 easement governs the property on which the accident took place, it argues that the easement does not support Phillips's argument because the city never exercised its right thereunder to construct a stream bank protection structure. Phillips, however, argues that the city utilized the easement when it constructed a fence on the land governed by the easement. Even if Phillips is correct that the fence itself is governed by the easement

---

[2] Phillips also argues that this case involves a proprietary function to the extent that R.C. 2744.01(G)(2)(d), which delineates the "maintenance, destruction, operation, and upkeep of a sewer system" as a proprietary function for purposes of political-subdivision immunity. In the absence of any additional argument as to how this subsection applies to this case, which does not involve a sewer system, we decline to address this argument.

and that the city constructed the fence, Phillips points to nothing supporting his conclusion that the construction of the fence constitutes a proprietary function for purposes of R.C. 2744.02(B)(2); the construction of the fence was not akin to the establishment, maintenance, and operation of a utility.

{¶ 23} Moreover, Phillips's negligence claims in this case do not relate to a stream bank protection structure; they arise out of the condition of the fence itself and the condition of the road — addressed in our analysis of Phillips's fourth assignment of error.

{¶ 24} Following a thorough review of the record, we cannot conclude that Phillips has satisfied his burden to show that the exception to immunity in R.C. 2744.02(B)(2) applies. Therefore, Phillips's second assignment of error is overruled.

### III. Exception to Immunity – R.C. 2744.02(B)(4)

{¶ 25} In Phillips's third assignment of error, he argues that the trial court erred in granting summary judgment to Independence because the manifest weight of the evidence demonstrated that the R.C. 2744.02(B)(4) exception to political immunity applied. Specifically, Phillips argues that because the new fence installed to replace the fence where the accident occurred is of a "contiguous and continuous nature" that replicates the existing fencing around the Independence City Hall, the fence is part of Independence's building and grounds.

{¶ 26} R.C. 2744.02(B)(4) provides:

Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or

property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

{¶ 27} To satisfy his burden of showing that the R.C. 2744.02(B)(4) exception applies, Phillips must show not only that the fence was "within or on the grounds" of city property, but also that his injury was due to "physical defects" of the fence.

{¶ 28} In his brief in opposition to the city's motion for summary judgment, Phillips asserted that the fence was inadequate and deficient. Specifically, Phillips argued that using a steel bar at the top of a chain link fence was contrary to guidelines governing guardrails and fencing. His assertion that the fence was not the appropriate type is not in itself an assertion that the fence was defective. Therefore, Phillips does not present any evidence that the fence itself was marred by any "physical defects." As such, he has not satisfied his burden of showing that the R.C. 2744.02(B)(4) exception to immunity applies. Therefore, Phillips's third assignment of error is overruled.

## IV. Ownership of the Fence

{¶ 29} In Phillips's first assignment of error, he argues that the trial court erred by failing to address the ownership of the fence. Specifically, Phillips argues that all evidence in the record indicates that the fence was owned and negligently maintained by the city.

{¶ 30} Even if we agree with Phillips as to ownership of the fence, nowhere in Phillips's argument does he explain how the fact of ownership, alone, has any bearing on the city's immunity under R.C. 2744.02. In light of our conclusions related to Phillips's second and third assignments of error, because Phillips is unable to show that any exception to immunity related to the fence applies in this case, any question related to the ownership of the fence has no bearing on the outcome of Phillips's appeal. Therefore, our decision regarding Phillips's second and third assignments of error renders his first assignment of error moot.

**V. Exception to Immunity – R.C. 2744.02(B)(3)**

{¶ 31} In Phillips's fourth and final assignment of error, he argues that the trial court erred in granting summary judgment to Independence in light of uncontroverted expert evidence that the failure to maintain the roadway was the actual cause of Phillips's leaving the roadway leading to injuries, an exception to political immunity pursuant to R.C. 2744.02(B)(3).

{¶ 32} R.C. 2744.02(B)(3) provides:

> Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.

Further, R.C. 2744.01(H) defines "public roads" as "public roads, highways, streets, avenues, alleys, and bridges within a political subdivision." The statute further explicitly states, in relevant part, that the definition of public roads "does not include

berms, shoulders, rights-of-way, or traffic control devices. . . ." R.C. 2744.01(H). In the context of R.C. 2744.02(B)(3), "in repair" has been interpreted to include """fixing holes or crumbling pavement," i.e., repairing potholes, when a road is deteriorating.'" *Nadrowski v. Cleveland*, 2022-Ohio-3232, ¶ 14 (8th Dist.), quoting *Todd v. Cleveland*, 2013-Ohio-101, ¶ 15 (8th Dist.), quoting *Crabtree v. Cook*, 2011-Ohio-5612, ¶ 27 (10th Dist.).

{¶ 33} Unlike in his other arguments, in which Phillips asserts that the fence was the cause of his injuries, Phillips asserts here that the initial cause of his accident was his car "striking a large pothole and loose pavement on the roadway[,]" after which his car veered off the road, over the sidewalk, and into the fence.

{¶ 34} Phillips's second amended complaint alleged that his vehicle left the road, and more specifically alleged that he "hit the shoulder of the road and was pulled off the road by the uneven surface." The complaint made no other allegations regarding the condition of the road. In his brief in opposition to the city's motion for summary judgment, Phillips asserted that prior to hitting the fence, his vehicle hit a "severely deteriorated section of the road."

{¶ 35} Phillips also attached an expert report to his brief in opposition from David Bentkowski ("Bentkowski"), who identified himself as an attorney, former mayor of a community near where the accident occurred, and family friend of Phillips. Bentkowski's expert report made two references to the "deteriorated" road; the report also included several photographs of the road and extensive narrative

descriptions of these photographs.[3]  Bentkowski maintained that the city inappropriately used a crack sealing technique to repair severely damaged asphalt, and he further made numerous legal conclusions throughout the report, including that the city's failure to maintain the road constituted negligence.

{¶ 36} Despite these assertions, in Phillips's deposition testimony, he states multiple times that he does not remember anything about how the accident occurred; the last thing he remembers is dropping his son off at daycare shortly before the accident.  Further, the record contains multiple references to the accident occurring after Phillips fell asleep at the wheel; this includes a statement made by Phillips himself to his physical therapist.

{¶ 37} First, to the extent that Phillips's argument is that the shoulder of the road was uneven or deteriorated, this argument cannot satisfy his burden of proving that the R.C. 2744.02(B)(3) exception to immunity applies, given that the statute specifically excludes the shoulder of the road.  Further, Phillips's argument that the R.C. 2744.02(B)(3) exception to immunity applies is undermined not only by his earlier arguments, but also by the balance of the evidence in the record, including Phillips's own statements regarding how the accident occurred.  Specifically, there is no evidence in the record that the accident was caused by a defect in the roadway.  Although Phillips's expert report states that it was the expert's belief that Phillips hit a severely deteriorated section of asphalt and this caused him to lose control of his vehicle, the expert has no qualifications as an accident reconstructionist and his

---

[3] The photographs included in this court's record are largely illegible.

report contains no scientific analysis of how or why the vehicle left the roadway. The expert's unsupported "belief" is not evidence. Because Phillips has failed to point to any evidence creating a genuine issue of material fact as to the city's maintenance of the road, he cannot show that the R.C. 2744.02(B)(3) exception to immunity applies. For these reasons, Phillips's fourth assignment of error is overruled.

{¶ 38} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
WILLIAM A. KLATT, JUDGE*

MICHELLE J. SHEEHAN, P.J., and
EMANUELLA D. GROVES, J., CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)