[Cite as *E. Ohio Gas Co. v. Cleveland*, 2026-Ohio-2322.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

EAST OHIO GAS COMPANY DBA
ENBRIDGE GAS OHIO,                    :

     Plaintiff-Appellee,          :

                               No. 115647

     v.                           :

CITY OF CLEVELAND,                    :

     Defendant-Appellant.         :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** June 18, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-25-110503

***Appearances:***

Law Offices of Stephen J. Pruneski, LLC, and Stephen J.
Pruneski, *for appellee.*

Mark D. Griffin, Cleveland Director of Law, and Jerome A.
Payne, Jr., Assistant Director of Law, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant the City of Cleveland ("the City") appeals from

the judgment of the trial court denying its motion for partial summary judgment on

the basis of political-subdivision immunity in a negligence action brought by

plaintiff-appellee, East Ohio Gas Company dba Enbridge Gas Ohio ("East Ohio Gas"). After a thorough review of the record and applicable law, we affirm and remand the case for further proceedings.

## I. Facts and Procedural History

{¶ 2} On January 20, 2025, East Ohio Gas filed a complaint against the City, alleging that on 15 separate occasions occurring between February 21, 2023, and October 3, 2024, city employees negligently struck and damaged East Ohio Gas's underground natural gas lines at various locations in and around the area. The complaint sought recovery of the repair costs incurred by East Ohio Gas as a result of the alleged damage to its underground gas facilities.

{¶ 3} Attached to the complaint was a summary of the 15 incidents, identifying the location of each occurrence, the date of damage, the repair costs attributable to each incident, and the legal basis upon which East Ohio Gas asserted liability against the City. The 11 claims that became the subject of the City's motion for partial summary judgment, and that are at issue in this appeal, were as follows: Claim 1, 3881 East 42nd Street, March 7, 2024; Claim 2, 10814 Clifton Blvd., June 21, 2024; Claim 3, 10 Severance Circle, March 6, 2024; Claim 4, 11178 Heritage Drive, October 3, 2024; Claim 5, 166 Birch Avenue, January 30, 2024; Claim 6, 6571 Cross-Creek Trail, February 1, 2024; Claim 7, 9617 Brecksville Road, November 2, 2023; Claim 8, 3680 Bainbridge Road, October 19, 2023; Claim 9, 20718 Gardenview Drive, June 21, 2023; Claim 10, 4231 West 20th Street, November 10, 2023; and Claim 11, 1340 East 82nd Street, February 21, 2023.

{¶ 4}   On August 1, 2025, the City filed a motion for partial summary judgment seeking dismissal of 11 of the 15 claims asserted by East Ohio Gas.  The City asserted that it was entitled to statutory immunity under R.C. 2744.02 and to discretionary-function immunity under R.C. 2744.03(A)(5).  In support of its motion, the City submitted affidavits from its water department unit leaders together with photographs and field notes describing the work performed at each of the 11 locations identified in the complaint.

{¶ 5}   The City's submissions, organized by claim and corresponding appendix, set forth the field circumstances asserted to support its claim of immunity.  As to Claim 1, the City asserted that the crew identified marked gas mains and attempted to access a leaking water main located between two gas lines; the City further stated that the gas main was struck during concrete removal because of its unusual depth and close proximity to the pavement and that the field conditions were such that the damage could not have been avoided.

{¶ 6}   As to Claim 2, the City's submissions reflected that its crew arrived after tree-removal contractors had exposed a stump whose roots were intertwined with a buried gas-connection box.  According to the affidavit, as the stump was gradually lifted, deeply embedded roots caused the connection box to shift, resulting in a leak, and the entanglement was not reasonably discoverable until the stump was lifted.

{¶ 7}   As to Claim 3, the unit leader's affidavit stated that the Ohio Utilities Protection Service ("OUPS") markings had been observed before work commenced

and that, while conducting a test-rod procedure outside the marked tolerance zones to locate a water-main leak, the rod made unintended contact with a buried plastic gas main.

{¶ 8} As to Claim 4, the City's affiant averred that the crew relied on visible gas markings present in the area and that the gas service line was struck more than three feet outside the 18-inch caution zone, as documented through measurements and photographs.

{¶ 9} On August 8, 2025, East Ohio Gas filed a motion to modify the case-management schedule, which the trial court granted, setting discovery and expert deadlines, a final pretrial date of December 10, 2025, and trial for January 20, 2026. On August 21, 2025, East Ohio Gas filed its memorandum in opposition to the City's motion for partial summary judgment. In support of its opposition, East Ohio Gas submitted the affidavit of Joe Dent ("Dent"), its senior claims agent, together with documentary evidence consisting of OUPS records, locator reports prepared by Benchmark, photographs of the excavation sites, public records maintained by the City, and business records of East Ohio Gas. Dent averred in his affidavit that his investigation of the claims included a review of the documentation and information provided by the crews who repaired the gas lines, the information available from OUPS regarding requests for the location of underground utilities, and the review of photographs and reports made by the locator, Benchmark, who marks the lines and investigates damages caused by third parties.

{¶ 10} With respect to Claim 1 (3881 East 42nd Street), East Ohio Gas asserted that the City never contacted OUPS before excavating, in violation of Ohio law. With respect to Claim 2 (10814 Clifton Blvd.), East Ohio Gas asserted that the City had previously executed a settlement agreement and issued a check to East Ohio Gas for the damage at issue, rendering the claim resolved. As to Claim 3 (10 Severance Circle), East Ohio Gas asserted that the City's submitted documentation referenced a different incident and did not address the damage described in Claim 3, and that Dent's affidavit, together with additional documents, established the City's liability for that claim. As to Claim 4 (11178 Heritage Drive), East Ohio Gas asserted that the City's own public records admitted that its employees struck and damaged an accurately marked line. With respect to Claim 5 (166 Birch Avenue, January 30, 2024), the City's submissions, through the affidavit of its unit leader, asserted that upon arrival the unit leader reviewed the OUPS markings, located shut-off valves, established safety precautions, and dropped test holes to locate the water-main leak before the crew began excavation. The unit leader further asserted that when the gas line was inadvertently struck, he documented the excavation area and the markings with photographs, notified the gas company, and that the point of contact with the gas line was outside the OUPS 18-inch tolerance zone from the nearest marking.

{¶ 11} Mr. Dent's affidavit, by contrast, asserted that Benchmark had accurately located the gas line prior to excavation and that the City's employees negligently struck and damaged the gas line. The parties submitted competing

evidentiary materials with respect to each of the remaining claims. As to Claims 6, 7, 8, 9, 10, and 11, the City's submissions included affidavits from its water department unit leaders and contemporaneous documentation supporting the City's position that its employees followed established excavation procedures and exercised reasonable care under the circumstances. East Ohio Gas, through Dent's affidavit and the documentation authenticated by him, asserted that the City's employees struck and damaged accurately marked gas lines and, with respect to certain claims, that the City failed to comply with statutory excavation requirements.

{¶ 12} As to Claim 9 (20718 Gardenview Drive, June 21, 2023) and Claim 10 (4231 West 20th Street, November 10, 2023), East Ohio Gas asserted that the City excavated prior to the expiration of the 48-hour OUPS waiting period. East Ohio Gas further asserted that, although the City contended an emergency ticket had been called in with respect to Claim 10, no such emergency ticket had in fact been requested through OUPS. As to Claim 11 (1340 East 82nd Street, February 21, 2023), East Ohio Gas asserted that the City's crew struck a marked service line and dug outside the area covered by the OUPS ticket.

{¶ 13} The City did not move for summary judgment on the four remaining claims set forth in Counts 12 through 15 of the complaint, although those claims involved factual circumstances similar to those underlying the 11 claims at issue in the motion. East Ohio Gas observed in its opposition that the City had, on numerous prior occasions, paid claims arising from similar incidents without asserting governmental immunity as a defense. The City's motion, East Ohio Gas's

opposition, and the parties' respective evidentiary materials placed before the trial court two competing factual narratives. The City's position was that its employees, in each of the 11 incidents, performed water-system repair work in accordance with accepted excavation practices, reviewed OUPS markings where available, and, in some instances, encountered field conditions — such as unusually deep gas lines, inaccurate markings, or buried connections concealed by tree roots — that made damage unavoidable despite the exercise of due care. East Ohio Gas's position, supported by Mr. Dent's affidavit and the documentary exhibits, was that the City's employees struck accurately marked lines, failed to contact OUPS in advance of excavation on certain occasions, excavated before expiration of the statutory 48-hour waiting period on other occasions, and dug outside the area covered by the OUPS ticket in at least one instance.

{¶ 14} On September 12, 2025, the trial court issued a journal entry denying the City's motion for partial summary judgment, finding that genuine issues of material fact remained as to each of the 11 claims at issue. The City filed a timely notice of appeal pursuant to R.C. 2744.02(C), which provides that an order denying a political subdivision the benefit of an alleged immunity from liability is a final, appealable order.

{¶ 15} The City advances three assignments of error for our review;

1. The trial court erred in denying summary judgment on four claims despite East Ohio Gas' failure to oppose City of Cleveland's statutory-immunity arguments or present any Civ.R. 56 evidence, thereby waiving any challenge to immunity on those claims;

2. The trial court erred as a matter of law in failing to grant summary judgment to the City of Cleveland on the basis of governmental immunity.

3. The trial court erred when it failed to reinstate immunity as a matter of law.

## II. Summary Judgment and Political-Subdivision Immunity

{¶ 16} In its first assignment of error, the City argued that the trial court erred in denying summary judgment as to Claims 1, 2, 3, and 4 because East Ohio Gas failed to oppose the City's statutory immunity arguments or present any Civ.R. 56 evidence directed to those claims, thereby waiving any challenge to immunity.

### A. Standard of Review

{¶ 17} An appellate court reviews a ruling on a motion for summary judgment de novo. *Argabrite v. Neer*, 2016-Ohio-8374, ¶ 14. Under a de novo standard, this court independently reviews the record and affords no deference to the trial court's decision. *Goldfarb v. Cuyahoga Cty. Dept. of Pub. Works*, 2025-Ohio-3283, ¶ 16 (8th Dist.).

{¶ 18} Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, which conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in its favor. Civ.R. 56(C). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once that

burden is satisfied, the nonmoving party must set forth specific facts, by affidavit or as otherwise provided in Civ.R. 56, showing that a genuine issue remains for trial. Civ.R. 56(E).

{¶ 19} Under R.C. 2744.02(C), an order denying a political subdivision the benefit of an alleged immunity is a final, appealable order. The scope of this court's review on such an interlocutory appeal is limited to the trial court's immunity determination. *Johnson v. Greater Cleveland Regional Transit Auth.*, 2021-Ohio-938, ¶ 51 (8th Dist.). *See Cook v. Metro. Sewer Dist. of Greater Cincinnati*, 2022-Ohio-3245, ¶ 19 (1st Dist.).

**B. Law and Analysis**

{¶ 20} The City moved for partial summary judgment on 11 of the 15 claims asserted by East Ohio Gas, asserting statutory immunity under R.C. Ch. 2744 as to each. As to Claim 1 (3881 East 42nd Street, March 7, 2024), Claim 2 (10814 Clifton Blvd., June 21, 2024), Claim 3 (10 Severance Circle, March 6, 2024), and Claim 4 (11178 Heritage Drive, October 3, 2024), the City supported its motion with affidavits from the responsible unit leaders, together with field notes and photographs documenting the conditions encountered at each site. The City argued that, on this record, no Civ.R. 56(C) evidence demonstrated negligent conduct by any city employee at any of these four locations and that the City was therefore entitled to immunity as a matter of law.

{¶ 21} The City contended on appeal that East Ohio Gas, in its memorandum in opposition, did not address the City's immunity arguments as they pertained to

Claims 1, 2, 3, and 4 and did not direct any Civ.R. 56 evidence specifically to those four incidents. The City argued that this silence amounted to waiver and required entry of judgment in its favor on these claims.

{¶ 22} It is well established that arguments not raised in the trial court generally cannot be raised for the first time on appeal. *First Rehab. Funding, LLC v. Milton*, 2025-Ohio-2677, ¶ 23 (8th Dist.). This court has likewise recognized that a party's "failure to raise an issue before the trial court waives that issue for appellate purposes." *Miller v. Cardinal Care Mgmt.*, 2019-Ohio-2826, ¶ 23 (8th Dist.). These principles, however, address the preservation of issues for appellate review; they do not displace the burden-shifting framework that governs the merits of a motion for summary judgment under Civ.R. 56.

{¶ 23} A nonmoving party's failure to respond to a particular argument in a summary judgment motion does not automatically entitle the movant to judgment. Civ.R. 56(C) requires the trial court to determine, on the record before it, whether the moving party has demonstrated the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. The movant retains the initial burden under *Dresher* regardless of the scope of the response. *Dresher*, 75 Ohio St.3d at 293. Only after the movant satisfies that initial burden does the reciprocal burden shift to the nonmoving party to identify specific facts demonstrating a genuine issue for trial. Civ.R. 56(E).

{¶ 24} Upon de novo review of the record, the trial court was presented with a single, consolidated memorandum in opposition addressing the City's motion as a

whole. East Ohio Gas submitted the affidavit of Dent, its senior claims agent, together with supporting documents, in opposition to the City's assertion of immunity on the 11 claims for which summary judgment was sought, including Claims 1 through 4. Although the City characterized the opposition as silent with respect to Claims 1 through 4, the record reflects that East Ohio Gas opposed the City's immunity arguments on each of the 11 contested claims and supported that opposition with Civ.R. 56 evidence. The substance and sufficiency of that evidence as it relates to the negligence exception under R.C. 2744.02(B)(2) is addressed in connection with the second assignment of error.

{¶ 25} The City's waiver argument, properly understood, is not that East Ohio Gas failed to file an opposition, but that the opposition did not separately and specifically rebut the immunity analysis for each of these four locations. That contention does not establish waiver in the appellate sense, because East Ohio Gas is the appellee and is not asserting any new argument on appeal. Nor does it, standing alone, entitle the City to summary judgment. The trial court remained obligated to examine the entire Civ.R. 56 record and to determine whether the City had carried its initial burden as to each claim and, if so, whether the evidence submitted by East Ohio Gas raised a genuine issue of material fact. The trial court concluded that genuine issues of material fact existed and denied the motion.

{¶ 26} Because the record demonstrates that East Ohio Gas filed a timely opposition supported by Civ.R. 56 evidence directed to the City's assertion of immunity on the contested claims, the City's threshold waiver argument as to

Claims 1 through 4 is not well taken. Whether the evidence submitted was sufficient to create a genuine issue of material fact on the question of negligence under R.C. 2744.02(B)(2), as to these or any of the other contested claims, is a question addressed in the second assignment of error.

{¶ 27} Therefore, the City's first assignment of error is overruled.

{¶ 28} In its second assignment of error, the City argued that the trial court erred as a matter of law in failing to grant summary judgment in its favor on the basis of governmental immunity. The City maintained that East Ohio Gas failed to produce admissible evidence establishing that any city employee acted negligently in connection with the seven remaining incidents and that without such evidence the exception to immunity in R.C. 2744.02(B)(2) could not be invoked.

{¶ 29} Ohio law applies a three-tiered analysis to determine whether a political subdivision is entitled to immunity under R.C. Ch. 2744. *Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1998); *Colbert v. Cleveland*, 2003-Ohio-3319, ¶ 7-9. The first tier sets forth the general rule that a political subdivision is immune from liability for injury or loss to person or property caused by an act or omission of the political subdivision or its employee in connection with a governmental or proprietary function. R.C. 2744.02(A)(1). The second tier requires the court to determine whether one of the five exceptions to immunity enumerated in R.C. 2744.02(B) applies. If an exception applies, the third tier requires the court to consider whether any defense in R.C. 2744.03 reinstates immunity.

{¶ 30} The City conceded, and this court agrees, that the operation, maintenance, and repair of its municipal water supply system constitutes a proprietary function. R.C. 2744.01(G)(2)(c). Accordingly, the relevant inquiry on the second tier is whether the exception in R.C. 2744.02(B)(2) applies. That subsection provides that political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions.

{¶ 31} To overcome immunity under R.C. 2744.02(B)(2), East Ohio Gas was required to come forward with evidence sufficient to establish the essential elements of negligence: the existence of a duty, a breach of that duty, and an injury proximately caused by the breach. *Riveredge Dentistry Partnership v. Cleveland*, 2021-Ohio-3817, ¶ 24 (8th Dist.). Negligence is not presumed from the mere fact that damage occurred during the course of a defendant's activity; the plaintiff bears the burden of proving, by a preponderance of the evidence, that the defendant failed to exercise the care that a reasonably prudent person would have exercised under the same or similar circumstances. *Id.*

{¶ 32} The City argued that East Ohio Gas relied principally on alleged violations of the Ohio Utilities Protection Service Act, R.C. 3781.25 et seq., to establish liability. This court has previously addressed that precise argument in litigation between these same parties. In *E. Ohio Gas Co. v. Cleveland*, 2019-Ohio-1248 (8th Dist.), this court explained that East Ohio Gas had failed to provide any authority for the proposition that a violation of an excavator's OUPS duties

constitutes negligence for purposes of the exception to immunity under R.C. 2744.02(B)(2), and that the City's liability was governed by R.C. Ch. 2744 rather than the OUPS Act. *Id.* at ¶ 34. The statutory framework of R.C. Ch. 2744 controls, and a reference to the OUPS Act does not, standing alone, establish a breach of the standard of care necessary to pierce immunity.

{¶ 33} That principle, however, does not resolve the appeal. The question on de novo review is whether, construing the Civ.R. 56 evidence most strongly in favor of East Ohio Gas, a genuine issue of material fact existed as to whether city employees negligently performed acts in connection with the proprietary function of operating and repairing the City's water supply system. The record submitted on summary judgment included, on the City's side, affidavits from the unit leaders who supervised the work at each location, together with contemporaneous photographs and field notes describing the conditions encountered and the steps taken before and during excavation. On East Ohio Gas's side, the record included the affidavit of Joe Dent, a senior claims agent, together with authenticated documents, including records generated by the City itself, describing the location of damage, the location of the OUPS markings, and the conditions present at the time of each incident.

{¶ 34} The City contended that the Dent affidavit was insufficient to create a genuine issue of material fact because Dent was not personally present at any of the seven excavation sites and because his averments were largely conclusory. A nonmoving party may not defeat summary judgment by resting on conclusory assertions or legal conclusions; rather, the affidavit must set forth specific facts as

required by Civ.R. 56(E). At the same time, however, an affiant is competent to testify on personal knowledge where the nature of the facts in the affidavit, combined with the identity of the affiant, creates a reasonable inference of personal knowledge. *Bank One, N.A. v. Lytle*, 2004-Ohio-6547, ¶ 13 (9th Dist.).

{¶ 35} The Dent affidavit went beyond the bare assertion of negligence the City characterized it as containing. It identified, for each of the seven incidents, the location at issue, the existence and color of the OUPS markings as documented in field records, the location at which the City's excavation work made contact with the gas facility relative to those markings, the nature of the damage observed, and the records relied upon to establish those facts. The affidavit authenticated documents, including records generated by the City's own personnel that depicted the excavation areas, the markings, and the points of contact. Whether the City's employees, in light of the markings present and the conditions encountered, used the care that a reasonably prudent excavator would have used in the same circumstances is a question that turns on disputed inferences from this documentary and testimonial record.

{¶ 36} For example, with respect to Claim 5 (166 Birch Avenue, January 30, 2024), the City's unit leader averred that he reviewed the OUPS markings, located shut-off valves, established safety precautions, and used test holes before excavating and that the point of contact with the gas line was outside the 18-inch tolerance zone from the nearest marking. The Dent affidavit and accompanying documents, by contrast, indicated that the line had been accurately located prior to excavation and

that the damage occurred within the area covered by the markings. The record on this single claim alone presented competing accounts, supported by documentary evidence, regarding the location of the gas facility relative to the markings, the steps taken before and during excavation, and whether those steps conformed to the care that a reasonably prudent excavator would have employed. Comparable disputes appeared as to each of Claims 6 through 11.

{¶ 37} On de novo review, these conflicts are not resolved by accepting the City's affidavits as conclusive. Affidavits submitted by a moving party that recite the affiant's own conformity with accepted practices do not negate a nonmoving party's contrary evidence; rather, they create the very factual dispute that Civ.R. 56(C) reserves for the trier of fact. The competing affidavits and documentary materials, when construed most strongly in favor of East Ohio Gas as the nonmoving party, were sufficient to permit reasonable minds to differ as to whether the City's employees breached the standard of care applicable to underground excavation work and whether any such breach proximately caused damage to East Ohio Gas's facilities.

{¶ 38} The City further argued that expert testimony was required to establish the standard of care applicable to underground excavation and that East Ohio Gas's failure to produce such testimony was fatal to its claims. The City did not, however, identify any controlling authority establishing that expert testimony is a categorical prerequisite to recovery in every case involving damage to an underground utility line by a municipal excavation crew. The Dent affidavit and the

authenticated records described excavation conditions, OUPS markings, tolerance zones, and the locations at which contact occurred in terms that are tied to the statutory and industry framework governing excavation work. Whether the City's conduct measured up to the applicable standard of care in light of those conditions is, on this record, a question reserved for the trier of fact rather than one suitable for resolution as a matter of law.

{¶ 39} Because genuine issues of material fact existed as to whether the City's employees negligently performed its work in connection with the proprietary function of maintaining and repairing the municipal water supply system, the second-tier exception to immunity in R.C. 2744.02(B)(2) was potentially applicable to each of Claims 5 through 11 and the City was not entitled to judgment as a matter of law on the immunity issue at the second tier.

{¶ 40} The City's second assignment of error is overruled.

{¶ 41} In its third assignment of error, the City argued that even if an exception to immunity under R.C. 2744.02(B)(2) applied, immunity was nevertheless reinstated under R.C. 2744.03(A)(5) because the challenged conduct involved discretionary water system repair decisions and East Ohio Gas did not allege wanton or reckless conduct.

{¶ 42} The third tier of the political-subdivision immunity analysis asks whether, after an exception to immunity has been established under R.C. 2744.02(B), immunity is reinstated by any of the defenses set forth in R.C. 2744.03. *Phillips v. Independence,* 2025-Ohio-5511, ¶ 11 (8th Dist.).

R.C. 2744.03(A)(5) provides, in relevant part, that a political subdivision is immune from liability if the injury or loss "resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources," unless that judgment or discretion was exercised "with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(5).

{¶ 43} The City argued that its employees' decisions concerning how to locate, expose, and repair leaking water mains, including the manner in which test rods were inserted, the means of removing concrete or tree stumps, and the depth and direction of excavation, were discretionary judgments about the use of equipment and personnel that fall squarely within R.C. 2744.03(A)(5). The City further argued that East Ohio Gas did not allege and did not submit any Civ.R. 56(C) evidence to suggest that any city employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶ 44} The City's argument, however, misapprehends the scope of R.C. 2744.03(A)(5). The discretionary function defense does not shield every on-the-ground judgment made by a municipal employee in the course of performing a proprietary function. If it did, the negligence exception in R.C. 2744.02(B)(2) would be rendered largely meaningless, because virtually every act of a public employee performing a utility repair involves some exercise of judgment in choosing tools, methods, and sequencing of work. The defense instead applies to the kind of judgment and discretion that involves a weighing of policy considerations, resource

allocation, or planning-level decisions and not to routine operational decisions made in the course of carrying out a proprietary function. *Riscatti v. Prime Properties Ltd. Partnership*, 2012-Ohio-2921, ¶ 34 (8th Dist.).

{¶ 45} The conduct at issue here, that is, how city water department crews physically located leaks, set up excavations, used test rods, removed obstructions, and operated equipment within or near marked tolerance zones, reflects operational decisions made by field employees in the day-to-day performance of water main repair work. Such operational decisions concerning the manner in which a proprietary function is performed do not constitute the type of high-level judgment or discretion contemplated by R.C. 2744.03(A)(5). *See Perkins v. Norwood City Schools*, 85 Ohio St.3d 191, 193 (1999). To hold otherwise would effectively immunize every negligent act committed by a city employee performing utility repairs, contrary to the General Assembly's express decision in R.C. 2744.02(B)(2) to subject political subdivisions to liability for the negligent performance of proprietary functions.

{¶ 46} Moreover, the City bore the initial burden, as the party moving for summary judgment on the basis of R.C. 2744.03(A)(5), of demonstrating that the challenged conduct involved the type of policy making judgment or resource-allocation decision to which the defense applies. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The City's submissions, including the affidavits of its unit leaders and accompanying photographs and field notes, describe how each excavation was carried out in the field. They do not identify any policy-level decision, resource

allocation choice, or weighing of competing public interests that drove the conduct that allegedly caused damage to East Ohio Gas's lines. On this record, the City did not carry its initial burden of establishing the applicability of R.C. 2744.03(A)(5).

{¶ 47} Because the conduct East Ohio Gas challenged consisted of operational decisions made in the performance of a proprietary function rather than the exercise of the kind of judgment or discretion protected by R.C. 2744.03(A)(5), the City was not entitled to have immunity reinstated under that provision as a matter of law. The trial court did not err in declining to do so.

{¶ 48} Therefore, the City's third assignment of error is overruled.

{¶ 49} Judgment affirmed, and the case is remanded for further proceedings.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MICHELLE J. SHEEHAN, A.J., and
EILEEN A. GALLAGHER, J., CONCUR